Arif AJDIN, Fatima Ajdinovska, Mirsada Ajdinovska, Saban Ajdinovska, Alma Ajdinovska, Petitioners,

v.

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.

No. 03–40070(L), 03–40071(CON).

United States Court of Appeals, Second Circuit.

Argued: Jan. 12, 2006.

Decided: Feb. 9, 2006.

Sunit Joshi (Sokol Braha, on the brief), Joshi & Associates, PC, New York, NY, for Petitioners.

Dustin B. Pead, Assistant United States Attorney (Paul M. Warner, United States Attorney for the District of Utah, on the brief), United States Attorney's Office for the District of Utah, Salt Lake City, UT, for Respondent.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

We consider here, *inter alia,* (1) whether the Board of Immigration Appeals ("BIA") abused its discretion in denying a motion to reopen removal proceedings on the ground that petitioners' reliance on general statements contained in a State Department report about the treatment of ethnic Albanians in Macedonia was insufficient to make a *prima facie* showing of eligibility for asylum, and (2) whether, in the circumstances presented, the BIA violated petitioners' due process rights by taking administrative notice of country conditions from a subsequent State Department report without affording petitioners an opportunity for rebuttal.

Petitioners Arif Ajdin, Fatima Ajdinovska and their children Mirsada, Saban, and Alma Ajdinovska—all natives of the former Yugoslavia and citizens of Macedonia—petition this Court for review of a June 11, 2003 decision of the BIA denying their motion to reopen removal proceedings on the basis of changed country conditions. Petitioners argue that their proceedings should have been reopened because, when adjudicating their prior applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), neither the Immigration Judge ("IJ") nor the BIA had the benefit of a 2002 State Department Country Report on Human Rights Practices in Macedonia,

which describes worsening treatment of ethnic Albanians and Turks in Macedonia between 2001 and 2002.[1]

"An asylum applicant may, at any time, move to reopen his case 'based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered if such evidence is material and was not available and could not have been discovered or presented at the previous hearing.'" *Poradisova v. Gonzales,* 420 F.3d 70, 78 (2d Cir.2005) (quoting 8 C.F.R. § 1003.2(c)(3)(ii)). "To prevail on the motion, the movant must also establish *prima facie* eligibility for asylum, *i.e.,* 'a realistic chance' that he will be able to establish eligibility." *Id.* (quoting *Guo v. Ashcroft,* 386 F.3d 556, 563–64 (3d Cir.2004)).

The BIA denied petitioners' motion on the grounds that (1) "respondents did not demonstrate that they suffered any harm in Macedonia or in the former Yugoslavia as a result of their Albanian ethnicity," and (2) "the general statements in the country report that was released in 2002 are inadequate to establish a prima facie claim to asylum." BIA Order of June 11, 2003, at 1. The BIA also took "administrative notice of the latest Department of State report, released on March 31, 2003, which indicates that there has been some improvement in conditions in Macedonia for Albanians." *Id.*

On appeal, petitioners claim that the BIA erred by (1) focusing exclusively on past persecution and failing to consider whether petitioners have a well-founded fear of future persecution upon returning to Macedonia; (2) holding that, notwithstanding a 2002 State Department report, petitioners failed to make a *prima facie*

showing of eligibility for asylum; (3) failing to adhere to a prior unpublished decision of the BIA that relied on the same State Department report in granting a motion to reopen; and (4) taking administrative notice of the 2003 State Department report without affording petitioners an opportunity to rebut the inferences drawn from that report, in violation of their due process rights. Petitioners also seek injunctive relief on the ground that the Government engaged in "affirmative misconduct," *Rojas–Reyes v. INS,* 235 F.3d 115, 126 (2d Cir.2000), by delaying the issuance of a Notice of Intent to Terminate Grant of Asylum to petitioner Ajdin, during which time Ajdin's family members came to the United States, thereby unnecessarily "sever[ing] their ties with their homeland," Pet'r's' Br. at 8.

■ We review the BIA's denial of a motion to reopen for abuse of discretion. *See Kaur v. BIA,* 413 F.3d 232, 233 (2d Cir.2005). Because "the reasons for giving deference to agency decisions on petitions for reopening ... in other administrative contexts apply with even greater force in the INS context," such motions are "plainly disfavor[ed]." *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Indeed, the Supreme Court has stated that a motion to reopen BIA proceedings may be properly analogized to "a motion for a new trial in a criminal case on the basis of newly discovered evidence, as to which courts have uniformly held that the moving party bears a heavy burden." *Id.*

"An abuse of discretion may be found ... where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any

---

1. Petitioner Ajdin is ethnically Turkish, while the remaining petitioners are ethnically Alba- nian.

reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner.'" *Kaur*, 413 F.3d at 233–34 (quoting *Ke Zhen Zhao*, 265 F.3d at 93 (internal citations omitted)).

■ Petitioners' first argument—that the BIA erroneously found them ineligible for asylum because they provided no evidence of past persecution—lacks merit because the BIA clearly took into account *both* the absence of any evidence that they had been persecuted on account of their ethnicities as well as petitioners' failure to demonstrate, based solely on "general statements in the country report," that they have a well-founded fear of persecution in the future.

■ Petitioners' second argument—that the BIA gave insufficient consideration to a 2002 State Department report describing worsening conditions for ethnic Albanians in Macedonia—is similarly unavailing because there is no indication that the BIA "fail[ed] to consider the country condition report submitted" by petitioners. *Yan Chen v. Gonzales*, 417 F.3d 268, 272 (2d Cir.2005). On the contrary, the BIA clearly referred, in its decision denying petitioners' motion to reopen, to "the country report that was released in 2002" and found that "the general statements" contained in that report were insufficient to support petitioners' claims of asylum. BIA Order of June 11, 2003, at 1. Moreover, the statements in the 2002 report on which petitioners rely principally concern the persecution of a faction of ethnic Albanians engaged in armed rebellion against the Macedonian government and do not establish that *any* ethnic Albanian living in Macedonia between 2001 and 2002 has a well-founded fear of persecution, simply by virtue of his ethnicity.[2]

In its decision of October 22, 2001 denying petitioners' original appeal of the IJ's removal order, the BIA noted that "this civil war [was] instigated by ethnic Albanian rebels, the insurgencies are limited to some parts of the country, the main moderate Albanian party, the DAP, is still part of the governing coalition, and negotiations [were] taking place between the rebels and the Macedonian government." In light of this prior explanation, the BIA's later statement—in the context of adjudicating petitioners' motion to reopen—that the 2002 report contains only "general statements," clearly conveys the BIA's view that petitioners failed to present any particularized evidence that they will be singled out for persecution by virtue of their status as ethnic Albanians.[3] We therefore disagree with petitioners that the BIA's decision is "devoid of any reasoning," *Kaur*, 413 F.3d at 233–34, or that it "did not provide a rational explanation or analysis [of] the new report," Pet'r's' Br. at 18. Accordingly, we hold that the BIA did not err in denying the motion to reopen on the basis that petitioners failed to make a *prima facie* showing of well-founded fear of future persecution.

■ Regarding petitioners' third claim—that the BIA failed to adhere to one of its prior unpublished decisions—this apparent inconsistency is of no moment because unpublished opinions of the BIA

---

2. The 2002 State Department report states that "[a]ccording to the last census, in 1994, ethnic Albanians comprised approximately 23 percent of the [Macedonian] population, but ethnic Albanian claims that they comprise around 30 percent were credible."

3. Because petitioner Ajdin is ethnically Turkish, and the 2002 report indicates that the "main concerns" of this subpopulation "center on the lack of Turkish-language education and media," [A 27], he could not, in any event, make a *prima facie* showing of future persecution on account of his ethnicity.

have no precedential value. *Douglas v. INS*, 28 F.3d 241, 245 (2d Cir.1994). The record before us indicates that petitioners have alleged no more than that they are part of the general population of ethnic Albanians and that some ethnic Albanian civilians have been mistreated in Macedonia. In the circumstances presented, we hold that the statements in the 2002 report do not provide adequate support for petitioners' asylum claims.

Finally, petitioners argue that the BIA denied them due process by taking administrative notice of the 2003 State Department report without affording them an opportunity to rebut the inferences drawn from that report. In *Yang v. McElroy*, 277 F.3d 158, 163 n. 4 (2d Cir.2002), we held that "[i]t is well-settled that the BIA may take administrative notice of current events bearing on an [asylum] applicant's well-founded fear of persecution" but did not address whether due process requires that the BIA provide petitioners with an opportunity to rebut inferences drawn from a country report. *Compare Gutierrez–Rogue v. INS*, 954 F.2d 769, 773 (D.C.Cir.1992) (holding that availability of motions to reopen satisfies the due process requirement that petitioners be allowed to rebut facts of which the BIA takes administrative notice) and *Kaczmarczyk v. INS*, 933 F.2d 588, 597 (7th Cir.1991) (same) *with de la Llana–Castellon v. INS*, 16 F.3d 1093, 1099–1100 (10th Cir.1994) (requiring that a "petitioner be given notice and an opportunity to rebut" facts of which the BIA has taken administrative notice) and *Castillo–Villagra v. INS*, 972 F.2d 1017, 1029 (9th Cir.1992) (holding that "the due process clause of the fifth amendment requires that petitioners be allowed an opportunity to rebut officially noticed facts, particularly when ... those facts are crucial to ... the outcome of the administrative proceeding").

In the circumstances presented, we are troubled by the BIA's decision to take administrative notice that "there has been some improvement in conditions in Macedonia for Albanians" for two reasons. First, while this assertion undoubtedly concerns "current events" in Macedonia, *Yang*, 277 F.3d at 163 n. 4, it represents a debatable assessment of the conditions facing a particular subgroup in Macedonia, rather than a statement of fact of the kind normally appropriate for the taking of administrative or judicial notice. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (authorizing the BIA to take "administrative notice of commonly known facts such as current events or the contents of official documents"); *cf.* Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known ... or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *Gutierrez–Rogue*, 954 F.2d at 772 (challenging the BIA's decision to take administrative notice of a change in government in Nicaragua). Second, where petitioners have already brought a motion to reopen, as here, the logic of *Gutierrez–Rogue* and *Kaczmarczyk* applies with less force because petitioners are generally not permitted to file successive motions to reopen, *see* 8 C.F.R. § 1003.2(c)(2), thereby limiting their ability to rebut administratively-noticed facts in subsequent proceedings.[4]

---

4. Petitioners could nonetheless have responded to the BIA's assertion by filing a second motion to reopen based on changed country conditions because the limitation on successive motions to reopen does not apply where country conditions are alleged to have changed. *See* 8 C.F.R. § 1003.2(c)(3)(ii). Moreover, assuming petitioners could point to an error of fact in the BIA's statement about the conditions facing ethnic Albanians in Ma-

■ In any event, we need not reach the issue of whether the BIA's statement that "there has been some improvement in conditions in Macedonia for Albanians," BIA Order of June 11, 2003, at 1, comports with the Fifth Amendment because it is clear that the BIA's denial of petitioners' motion to reopen did not depend on its assertions concerning the 2003 State Department report. Rather, the BIA's initial finding that the 2002 report did not contain enough evidence to support a *prima facie* showing of asylum eligibility is sufficient to support its denial of petitioners' motion. Because we hold that any error with regard to the BIA's subsequent reference to the 2003 report was harmless, and because "we can state with confidence that the IJ would adhere to his decision if we were to remand," *Xiao Ji Chen v. USDOJ*, 434 F.3d 144 (2d Cir. Jan. 6, 2006), 2006 U.S.App. LEXIS 261, at *31, we deny the petition without reaching this constitutional question.

■ Finally, petitioners contend that the Government should be enjoined from enforcing the IJ's removal orders because it engaged in "affirmative misconduct" by unduly delaying issuance of a Notice of Intent to Terminate Grant of Asylum to petitioner Ajdin. *See Rojas–Reyes v. INS*, 235 F.3d 115, 126 (2d Cir.2000). Prior to the issuance of this Notice, petitioner Ajdinovska and her children came to the United States based on the then-valid asylee status of petitioner Ajdin and have since integrated into mainstream American society. Because, upon our review of the record, we hold that the Government did not engage in "affirmative misconduct" and because petitioners have since had ample

opportunity to challenge their removal orders, we deny their request for injunctive relief.

CONCLUSION

In sum, we hold that

(1) in addition to considering whether petitioners had suffered past persecution, the BIA properly considered whether petitioners had a well-founded fear of future persecution;

(2) the BIA did not err in denying the motion to reopen inasmuch as petitioners failed to present any particularized evidence suggesting that they will be singled out for persecution by virtue of their status as ethnic Albanians;

(3) the BIA did not err in failing to adhere to one of its prior unpublished decisions which granted a motion to reopen on the basis of the 2002 State Department report for Macedonia;

(4) any error associated with the BIA's reference to a 2003 State Department report was harmless, and therefore remand is unnecessary; and

(5) because the Government did not engage in "affirmative misconduct" and because petitioners have since had ample opportunity to challenge their removal orders, their request for injunctive relief is denied.

\*     \*     \*     \*     \*     \*

cedonia, they might have filed a motion to reconsider, thereby allowing them to contest the administratively-noticed "facts." *See* 8 C.F.R. § 1003.2(b). Of course, the BIA's decision to grant a motion to reopen or reconsider is purely discretionary. *See* C.F.R.

§ 1003.2(a); *see also de la Llana–Castellon,* 16 F.3d at 1099–1100 (concluding that the potential availability of motions to reopen does not satisfy due process requirements in this context because the BIA's grant or denial of such motions is discretionary).

We have reviewed petitioners' remaining arguments and find them to be without merit. Accordingly, we DENY the petition, as well as any pending motion for a stay of removal.