Feimei LI and Duo Cen, Plaintiffs,

v.

Daniel M. RENAUD, Director Vermont Service Center, U.S. Citizenship and Immigration Services, et al., Defendants.

No. 08 Civ. 7770(VM).

United States District Court, S.D. New York.

April 27, 2010.

Margaret Wai Wong, Margaret Wong & Assoc., Co., LPA, Cleveland, OH, for Plaintiff.

David Vincent Bober, U.S. Attorney's Office, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Feimei Li ("Li") and her son Duo Cen ("Cen") (collectively, "Plaintiffs") brought this action against the following defendants in their official capacity: Paul Novak as Director of the Vermont Service Center of the United States Citizenship and Immigration Services (the "USCIS"), Jonathan Scharfen as Acting Director of the USCIS, Eric Holder as the Attorney General of the United States, and Janet Napolitano as the Secretary of the Department of Homeland Security (collectively, "Defendants"). Plaintiffs' complaint (the "Complaint"), broadly stated, asserts that the USCIS applied an improper interpretation of a federal immigration statute, the Child Status Protection Act (the "CSPA"), Pub.L. No. 107–208, 116 Stat. 927 (2002), § 203(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(h), issued by the Board of Immigration Appeals ("BIA"). When construed properly, according to Plaintiffs, the CSPA would permit Cen to immigrate to the United States immediately as opposed to requiring him to wait for a number of years to obtain a visa. Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. They argue that the statute at issue is ambiguous and that, under *Chevron USA, Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court must defer to the agency interpretation because Plaintiffs have failed to show that the ruling was arbitrary, capricious, or manifestly contrary to the statute. For the reasons stated below, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. FAMILY PREFERENCE PETITIONS UNDER THE INA

The present dispute requires a fairly extensive background discussion of the family-based, immigration visas here at issue. Permission to enter the United States may take one of many routes. The family-based, immigrant visa avenue requires a United States citizen or lawful permanent resident to file a Form I–130 Petition for Alien Relative ("Form I–130 Petition") with the USCIS. *See* 8 U.S.C. §§ 1153(a), 1154(a)(1)(A)(i), (a)(1)(B)(i)(I); 8 C.F.R. § 204.1(a)(1); *Drax v. Reno*, 338 F.3d 98, 113–14 (2d Cir.2003). In a Form I–130 Petition, the United States citizen or lawful permanent resident who files the form is known as the petitioner ("Petitioner") and the alien relative attempting to gain entry to the United States is known as the beneficiary ("Beneficiary"). When another alien attempts to obtain the benefits of the main Beneficiary's Form I–130 Petition, the first Beneficiary is referred to as the primary beneficiary ("Primary Beneficiary") and the additional one as the derivative beneficiary ("Derivative Benefi-

ciary"). For example, if the Petitioner lists the parent of a child as a Beneficiary on the Form I–130 Petition, the parent is the Primary Beneficiary and the child may be named as a Derivative Beneficiary.

Congress delineated various family preference categories ("Family Preference Categories") by which to classify the Beneficiary in relation to the Petitioner, See Drax, 338 F.3d at 114. These categories encompass the Petitioner's immediate relatives, including his spouse, parents, offspring, and siblings. Notably, Congress has not promulgated a Family Preference Category for non-immediate family, such as grandchildren, nieces, or nephews.

When a Petitioner submits a Form I–130 Petition on behalf of an alien, the USCIS determines whether the alien is in fact qualified to be a Beneficiary. See 8 U.S.C. § 1154(b). Only those Beneficiaries who fit into a Family Preference Category qualify. Once the Beneficiary is deemed qualified, the USCIS approves the Form I–130 Petition. See Bolvito v. Mukasey, 527 F.3d 428, 430 (5th Cir.2008); see also Drax, 338 F.3d at 114. Petitioners may name one or more Derivative Beneficiaries on a single Form I–130 Petition for one of several reasons. Some name Derivative Beneficiaries to avoid paying multiple Form I–130 Petition filing fees for various Beneficiaries who may qualify under one of the Family Preference Categories. Others do so in order to name Derivative Beneficiaries who would not otherwise qualify as Beneficiaries aside from the status they derive from the Primary Beneficiary.

The USCIS's approval of a Form I–130 Petition does not automatically cause the agency to provide a visa or grant permanent lawful resident status; instead it results only in rendering the Beneficiary eligible to receive permission to enter the country pursuant to further rules governing the applicable Family Preference Category. See id. at 432 n. 4. Under certain numerical limitations (the "Numerical Limitations"), Congress limits the number of visas available each year for each Family Preference Category. According to the United States Department of State, the number of applications each year for visas for Chinese alien Beneficiaries far exceeds the Numerical Limitations for each Family Preference Category. Thus, even though USCIS grants a Petitioner's Form I–130 Petition, the Chinese Beneficiary must nonetheless wait for permission to actually enter the United States.

To keep the visa process orderly while approved Beneficiaries await permission to enter the United States, the USCIS assigns Beneficiaries priority dates ("Priority Dates"). A Priority Date is, in effect, a place on a waiting line. See Bolvito, 527 F.3d at 430 (stating that the "alien's place in the waiting line for an immigrant visa is determined by [his] . . . priority date."). The line forms because the number of visas available each year for each Family Preference Category, at least for approved Beneficiaries from China, exceeds its corresponding Numerical Limitation.

The Priority Date is dictated by the date on which the Petitioner filed the Form I–130 Petition. See 8 C.F.R. § 204.1(c). The earlier a Beneficiary's Priority Date, the longer she has waited and the closer she is to the end of the visa waiting line. In many cases, entry to the United States will not follow Form I–130 Petition approval for a term of years that is not insubstantial.

Not all aliens are subject to the Numerical Limitations. For example, United States citizen Petitioners' "immediate relatives"—e.g., unmarried children under twenty-one years of age ("Child" or "Children"), see 8 U.S.C. § 1101(b)(1), or spouses—are immediately eligible for a visa

upon approval of the Form I–130 Petition. *See* 8 U.S.C. § 1151; *Azizi v. Thornburgh,* 908 F.2d 1130, 1131–32 (2d Cir.1990). The Numerical Limitations, however, do apply to relatives of United States citizens who do not qualify as immediate relatives, and even for immediate relatives when the Petitioner is merely a lawful permanent resident. The USCIS categorizes those who are subject to the Numerical Limitations into a Family Preference Category upon approval of their Form I–130 Petition. *See Drax,* 338 F.3d at 114.

Congress established four Family Preference Categories, each of which is subject to a different Numerical Limitation based on a formula that takes into account both the Family Preference Category itself and the Beneficiary's country of origin. *See* 8 U.S.C. §§ 1151(a)(1) & (c), 1153(a); *Bolvito,* 527 F.3d at 429–32 (explaining the visa petitioning process, Family Preference Categories, and Numerical Limitations). Congress provided first preference (the "F1 Family Preference Category") to unmarried adult sons and daughters of United States citizens. *See* 8 U.S.C. § 1153(a)(1). Congress then allocated second preference to two-subsets: (1) spouses and Children of lawful permanent residents (the "F2A Family Preference Category"), *see id.* § 1153(a)(2)(A), and (2) unmarried adult sons and daughters of lawful permanent residents (the "F2B Family Preference Category"), *see id.* § 1153(a)(2)(B). The F2B Family Preference Category is the one most directly at issue in the present litigation. Congress reserved the third and fourth Family Preference Categories for United States citizen Petitioners' married adult children (the "F3 Family Preference Category") and siblings (the "F4 Family Preference Category"). *See id.* 1153(a)(3) & (4). None of the Family Preference Categories confers Beneficiary status for Petitioners' nieces, nephews, or grandchildren.

Under this framework, an issue arises when Children Derivative Beneficiaries face possible separation from their parents when the United States grants the latter a visa. To avoid separating a Child from a parent upon the parent's entry to the United States, Congress gave the Child Derivative Beneficiary "the same status" and "order" as the parent Primary Beneficiary, as long as the Derivative Beneficiary maintains his status as a Child when the visa is granted. *See Id.* § 1153(d). However, while a Primary Beneficiary parent awaits a visa, her Child Derivative Beneficiary may "age out" by turning twenty-one years old and thus no longer qualify as a Child. *See Bolvito,* 527 F.3d at 435–36 ("[A] qualifying familial relationship that is terminated due to … 'aging out' … no longer entitles the [Derivative Beneficiary] to accompany[ ] or follow[ ]" the primary beneficiary to the United States).

The age-out provision has led to a substantial number of Derivative Beneficiaries losing their entitlement to preferences and order on the waiting line. Some of these Derivative Beneficiaries age out because of administrative delays caused by the large number of visa petitions and the lack of resources to adjudicate them promptly. Others age out not because of administrative delays, but because they turn twenty-one years old while remaining on the Congressionally-mandated waiting lines.

### B. *THE FORM I–130 PETITIONS OF YONG GUANG LI AND LI* [1]

Li and Cen challenge the Priority Date provided by the USCIS to Cen. Li, a citi-

---

1. The facts below—which are not disputed by the parties-are taken from the Complaint, and the documents attached to it or incorporated by reference. The Court accepts these facts

zen of the People's Republic of China, is now a lawful permanent resident of the United States. Cen, also a citizen of the People's Republic of China, currently resides in China, without permission to enter the United States because his Priority Date has not yet reached the front of the waiting line.

On June 6, 1994, Yong Guang Li (Li's father and Cen's grandfather), a permanent lawful resident of the United States, filed a Form I–130 Petition (the "1994 Petition"), naming his unmarried adult daughter Li as the Primary Beneficiary. Accordingly, the 1994 Petition requested a visa for Li in the F2B Family Preference Category. As mentioned above, Congress set up this category for adult children (Li) of lawful permanent residents of the United States (Yong Guang Li). Cen, as Li's Child (under age 21 when Yong Guang Li filed the 1994 Petition), automatically qualified as a Derivative Beneficiary.

No Family Preference Category existed under which either Yong Guang Li or Li could have named Cen as a direct Beneficiary on the 1994 Petition. With regard to the former, Congress has not legislated a Family Preference Category for grandchildren of lawful permanent residents. In terms of the latter, no law allows for those who are not United States citizens or non-lawful permanent residents to file Form I–130 Petitions. Thus, Cen's sole status as a Beneficiary in 1994 was that of a Derivative Beneficiary on the 1994 Petition.

On April 4, 1995, the Immigration and Nationalization Service ("INS")[2] approved the 1994 Petition, with a Priority Date of June 6, 1994 for its Primary Beneficiary, Li. At the time, Cen was fifteen years old and qualified for Derivative Beneficiary Status as Li's Child. Thus, Cen was subject to Li's Priority Date. If the United States had a visa available to Li at that time, Cen too could have immigrated to the United States because he was still a Child. However, the INS did not make a visa immediately available to Li because of the significant waiting line for those in the F2B Family Preference Category.

Approximately ten years later, in March 2005, Li arrived at the front of the F2B Family Preference Category waiting line for approved Form I–130 Petition Chinese aliens with a Priority Date of June 6, 1994. The United States granted Li a permanent resident card, conferring on Li the status of lawful permanent resident. By 2005, however, Cen was twenty-six years old, and, for the past approximately five years no longer qualified as a Child who could stand next to his mother on line and derive beneficiary status from the 1994 Petition. Thus, Cen had "aged-out" prior to the time at which the USCIS punched Li's ticket at the front of the F2B Family Preference Category waiting line. Li was authorized to immigrate to the United States, but Cen was not.

As her father had done on her behalf in 1994, on May 1, 2008, Li, at the time a lawful permanent resident for over three years, filed a Form I–130 Petition (the "2008 Petition"), naming Cen as an unmarried adult son Beneficiary of a lawful permanent resident pursuant to the F2B Family Preference Category. In a cover letter that accompanied the 2008 Petition, Li requested a Priority Date of June 6,

as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir. 2008). Except where specifically referenced, no further citation to these sources will be made.

2. The INS preceded the USCIS as the administrative agency responsible for processing immigration petitions.

1994 for Cen's visa because Cen formerly had that Priority Date under the 1994 Petition before aging out. The USCIS approved the 2008 Petition on August 7, 2008, but established the Priority Date as April 25, 2008 rather than the 1994 date requested by Li. Petitioners with the 1994 Priority Date have long since been provided with visas and gained entry to the United States, as illustrated by Li's entry to the United States in May 2005 under the 1994 Petition. Thus, a Priority Date of June 6, 1994 would have made Cen immediately eligible for an immigrant visa. Instead, because of the USCIS's operative April 25, 2008 Priority Date, Cen will have to wait "about nine years based on current processing times" to join his family in the United States. (Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, March 11, 2010, at 8.)

### C. *THE CSPA*

Plaintiffs contend that the CSPA entitles Cen to the June 6, 1994 Priority Date. The CSPA contains three subsections. Subsection 1153(h)(1) ("§ 1153(h)(1)") states that for the purposes of visa eligibility, the age of the beneficiary of certain Form I–130 Petitions is determined by excluding the time during which the petition is pending with the USCIS. *See* 8 U.S.C. § 1153(h)(1). Specifically, § 1153(h)(1) states:

> (1) In general
>
> For the purposes of subsections (1)(2)(A) [spouses and children of lawful permanent residents] and (d) [derivative beneficiaries] of this section, a determination of whether an alien satisfies the age requirement [as a child] shall be made using—
>
> (A) the age of the alien on the date on which an immigrant visa number comes available for such alien (or in the case of subsection (d) of this sec-

tion, the date on which an immigrant visa number becomes available for the alien's parent), ...; reduced by

> (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

*Id.* § 1153(h)(1). The parties do not dispute that this provision applies to Cen and that it deems him over the age of twenty-one.

Subsection 1153(h)(2) (" § 1153(h)(2)") describes certain types of petitions:

> (2) Petitions described
>
> The petition described in this paragraph is—
>
> (A) with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed under section 1154 of this title for classification of an alien child under subsection (a)(2)(A) of this section; or
>
> (B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under subsection (d) of this title for classification of the alien's parent
>
> . . . .

*Id.* § 1153(h)(2).

Subsection 1153(h)(3) (" § 1153(h)(3)"), the provision most directly at issue in Defendants' present motion, provides:

> (3) Retention of Priority Date
>
> If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153(h)(3).

Plaintiffs now contend that § 1153(h)(3) dictates that Li's 2008 Petition on behalf of

Cen must be converted from the 1994 Petition and retain the Priority Date from that petition. Defendants move to dismiss under Rule 12(b)(6), asserting that § 1153(h)(3) is ambiguous, and that the Court must therefore defer to the BIA's reasonable construction of the statute in *Matter of Wang*, 25 I. & N. Dec. 28 (BIA 2009), pursuant to which the USCIS applied the 2008 Petition's Priority Date rather than the 1994 Petition's Priority Date.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In assessing a motion under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially-plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Sec.*

*Litig.*, 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005) (quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal*, 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. In the instant case, the parties do not dispute the facts alleged in the Complaint; the disagreement between the parties is one purely over the law.

### B. *CHEVRON FRAMEWORK* [3]

■ Under *Chevron USA, Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court applies a two-step framework to decide whether an agency's interpretation of a statute is proper. At the first step is whether the statute is ambiguous. The Court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843–

---

**3.** At the outset, the Court agrees with the Government that Cen does not have standing to challenge the USCIS's decision regarding the 2008 Petition's Priority Date. A District Court action for judicial review of an administrative decision concerning a Form I–130 Petition may be brought only by the Petitioner (in the instant action, Li) not by the Beneficia-ry (Cen). *See Blacher v. Ridge*, 436 F.Supp.2d 602, 606 n. 3 (S.D.N.Y.2006) (*citing* 8 C.F.R. § 103.3(a)(1)(iii)(B)). Thus, the Court dismisses Cen's claim for lack of standing, but reviews Plaintiffs' arguments on the merits on behalf of Li, who has standing to challenge the agency decision.

44, 104 S.Ct. 2778. If, however, the Court finds ambiguity, it must then move to the second step under *Chevron.* *See id.* at 843, 104 S.Ct. 2778.

At step two, the Court must determine whether to defer to the agency interpretation of the ambiguous statute. *See id.* Under *Chevron,* the Court must defer to a BIA interpretation unless it is "arbitrary, capricious or manifestly contrary to the statute." *Mora v. Mukasey,* 550 F.3d 231, 234 (2d Cir.2008) (*quoting Chevron,* 467 U.S. at 844, 104 S.Ct. 2778).[4] A reasonable published, precedential decision of the BIA that interprets an ambiguous provision of the INA is entitled to deference under *Chevron. See, e.g., Mora,* 550 F.3d at 234, 238; *Yuen Jin v. Mukasey,* 538 F.3d 143, 150 (2d Cir.2008) ("Precedential BIA decisions (i.e., those that have been published) ... are eligible for *Chevron* deference insofar as they represent the agency's authoritative interpretations of statutes." (quotation marks omitted)). Courts accord deference because they "presum[e] that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 740–41, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996).

## C. *AMBIGUITY OF § 1153(h)(3)*

■ Plaintiffs contend that § 1153(h)(3) is unambiguous and that the Court must construe it to mandate that the 1994 Petition must be automatically converted into the 2008 Petition, retaining its June 6, 1994 Priority Date. The Court disagrees and finds that § 1153(h)(3) is ambiguous because it refers only vaguely to "petitions" that qualify for automatic conversion and Priority Date retention, but does not explicitly articulate which petitions qualify for this favorable treatment. *Accord Zhang v. Napolitano,* 663 F.Supp.2d 913, 919–20 (C.D.Cal.2009) ("The Court finds that [§ 1153(h)(3)] is ambiguous at *Chevron* step one.").

Plaintiffs argue that § 1153(h)(3) is unambiguous when read in the light cast by its immediately-preceding subsection. Subsection 1153(h)(1) refers to the "applicable petition described in paragraph (2)," and paragraph (2), in turn, describes precisely the types of petitions to which paragraph (1) applies. *See* 8 U.S.C. § 1153(h)(2) (beginning with the words "[t]he petition described *in this paragraph*" (emphasis added)). The Court cannot conclude that the petitions described in § 1153(h)(2) clarify the vagueness of those described in § 1153(h)(3) because the former specifically describe only "petitions[s] described *in this paragraph.*" *Id.* (emphasis added). Subsection 1153(h)(2) does not read "the petitions described in this [subsection]" or "the petitions described in this paragraph [and the next paragraph.]" The Court cannot overcome this issue by construing the words "subsection" and "paragraph" to be synonymous for the purposes of these subsections because the CSPA uses the word "subsection" several times, suggesting that the drafters understood the distinction between "subsection" and "paragraph."

---

4. The party challenging an agency's decision on grounds that it is arbitrary, capricious, or manifestly contrary to the statute bears the burden of proof. " 'Indeed, even assuming the [agency] made missteps ... the burden is on petitioners to demonstrate that the [agency's] ultimate conclusions are unreasonable.' " *George v. Bay Area Rapid Transit,* 577 F.3d 1005, 1011 (9th Cir.2009) (alterations and ellipsis in original) (*quoting City of Olmsted Falls, Ohio v. FAA,* 292 F.3d 261, 271 (D.C.Cir.2002)).

Thus, the Court finds that the ambiguity present in § 1153(h)(3) is not cured by reading it in conjunction with its immediately-preceding subsections.

Because the Court finds ambiguity, under *Chevron*, the issue for the Court is not whether the BIA interpreted § 1153(h)(3) correctly or incorrectly, but whether Plaintiffs have shown that the BIA's reading is arbitrary, capricious, or manifestly contrary to the statute and therefore not entitled to deference.

### D. *DEFERENCE TO THE BIA'S INTERPRETATION OF § 1153(h)(3)*

■ The USCIS determined Cen's Priority Date by applying the BIA's interpretation of § 1153(h)(3) in its recently-published decision in *Wang*, 25 I. & N. Dec. at 28, a case with facts similar to those present here. Li contends that the BIA's holding in *Wang* contradicts the plain language of the statute and is therefore not entitled to *Chevron* deference.

In *Wang*, a United States citizen filed an F4 Family Preference Category Form I–130 Petition in 1992 (the "1992 Petition") for her brother Zhuomin Wang ("Wang") as the Primary Beneficiary. The 1992 Petition named Wang's wife and Children as Derivative Beneficiaries. At that time, Wang's wife and children, like Cen, did not fall into any of the Family Preference Categories, and were thus eligible only for family-based visa consideration as Derivative Beneficiaries. The USCIS approved the 1992 Petition. However, before Wang and his Derivative Beneficiaries arrived at the front of the F4 Family Preference Category visa line in October 2005, one of his daughters, Xiuyi Wang, turned twenty-one, thus losing her Derivative Beneficiary status because she no longer qualified as Wang's Child.

After becoming a lawful permanent resident of the United States in October 2005, Wang, like Li in 2008 after she attained this status, filed (albeit more promptly than Li) a distinct Form I–130 Petition (the "2006 Petition") under the F2B Family Preference Category for his unmarried adult daughter Xiuyi Wang. Analogous to Li's contentions in the present case, Wang argued that, pursuant to § 1153(h)(3), the 1992 Petition should be converted into the 2006 Petition, retaining the Priority Date from the former. *See id.* at 29–32, 34. The BIA rejected Wang's argument.

As a threshold matter, the BIA found that § 1153(h)(3)'s terms, including those relevant to the petitions to which it applied, were ambiguous. *See id.* at 33. Thus, to clarify the ambiguity, the BIA surveyed the relevant statutes, regulations, and legislative history.

The BIA first examined the CSPA and immigration regulations, presuming that Congress enacted § 1153(h)(3) with an understanding of those authorities' usages of the terms "conversion" and "retention." *Id.* at 35. By looking to other provisions of the CSPA and to immigration regulations to aid its interpretation, the BIA employed methods of statutory construction that are consistent with Supreme Court and Second Circuit precedent. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) ("[The] normal rule of statutory construction [is that] identical words in different parts of the same act are intended to have the same meaning" (quotation marks omitted)); *Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 115 (2d Cir.2007) (stating that courts may assume that Congress, in enacting a statute, is aware of relevant administrative rules).

The BIA also examined CSPA's legislative history, finding that it did not support a broader reading of the terms "conversion" and "retention." *Id.* at 37–39. Ac-

cording to the BIA, the legislative history of the CSPA demonstrated that Congress intended to provide for the retention of the Priority Date associated with Child status "without displacing others who have been waiting patiently" for a visa. *Id.* at 37 (quotation marks omitted). The agency reasoned that if the USCIS granted Xiuyi Wang the earlier Priority Date, she would "jump to the front of the line ... thereby causing all the individuals behind her to fall further behind" in the line. *Id.* at 38 (quotation marks omitted).

Further, the BIA found that the legislative history showed that Congress's purpose in enacting the CSPA targeted only one type of delay that caused aging out: delay by the agency in the processing of visa petitions. *See id.*; *see also Padash v. INS*, 358 F.3d 1161, 1174 (9th Cir.2004) (Congress had "but one goal" in enacting the CSPA, "to override the arbitrariness of statutory age-out provisions that resulted in young immigrants losing opportunities to which they are entitled because of administrative delays," i.e., "agency delays in processing their applications or petitions."). When enacting the CSPA, Congress's sights were not aimed at "delays resulting from visa allocation issues, such as the long wait associated with priority dates" that result from the very Numerical Limitations that Congress imposed. *Wang*, 25 I. & N. Dec. at 38; *see id.* ("We find that while the legislative record demonstrates a clear concern on the part of Congress to ameliorate the delays associated with the processing of visa petitions, there is no indication in the statutory language or legislative history of the CSPA that Congress intended to create a mechanism to avoid the natural consequence of a child aging out of a visa category because of the length of the visa line.").

With this understanding of the terminology and purpose of CSPA, the BIA held

that § 1153(h)(3)'s term "conversion" meant an automatic change in Beneficiary classification "without the need to file a new visa petition," and that the statute's use of the word "retention" applied only with respect to "visa petitions filed by the same family member." *Id.* The BIA therefore gave effect to § 1153(h)(3)'s mandate that "the alien's petition shall *automatically* be converted." 8 U.S.C. § 1153(h)(3) (emphasis added). Accordingly, the BIA held that "[t]he automatic conversion and priority date retention provisions of [CSPA] do not apply to an alien who ages out of eligibility for an immigrant visa as the derivative beneficiary of [certain] visa petition[s], and on whose behalf a second [Family Preference Category] petition is later filed by a different petitioner." *Wang*, 25 I. & N. Dec. at 28.

As a result of the BIA's interpretation of "conversion" and "retention," it found § 1153(h)(3) to be limited to Form I–130 Petitions in which the Primary Beneficiary or Derivative Beneficiary is the son or daughter of a lawful permanent resident. When the lawful permanent resident Petitioner files the Form I–130 Petition, these Beneficiaries are Children and fall under the F2A Family Preference Category— even when named only as Derivative Beneficiaries on the petition. Under the BIA's interpretation of § 1153(h)(3), when these individuals turn twenty-one years old, their Form I–130 Petitions are automatically converted (without the need to file a distinct, second Form I–130 Petition) to the F2B Family Preference Category. The unmarried Beneficiary qualifies immediately into this category upon turning twenty-one because she qualifies then as an unmarried adult daughter of a lawful permanent resident. The converted petition retains its earlier-iteration's Priority Date to avoid the result in which the continuously-eligible Beneficiary has her Priority Date moved back simply because she must

step over from the F2A Family Preference Category line to the F2B Family Preference Category line when she turns twenty-one.

Applied in *Wang*, the BIA found that there can be no "conversion" of one Form I–130 Petition into another because there was no appropriate category for the Beneficiary to convert to at the time she aged out (which pre-dated the 2006 Petition), as there is no category for the niece of a United States citizen. *Id.* at 35 ("[T]he term 'conversion' has consistently been used to mean that a visa petition converts from one visa category to another, and the beneficiary of that petition then falls within a new classification without the need to file a new visa petition."); *id.* at 38 ("[T]here was no available category to which the beneficiary's petition could convert because no category exists for the niece of a United States citizen."). Thus, the gap in Xiuyi Wang's eligibility prevented the original petition's conversion. Xiuyi Wang also could not benefit from Priority Date "retention," because there were two distinct Form I–130 Petitions at issue, with one filed by Wang's sister, and the second one by Wang himself. *See id.* at 36; *id.* at 35 ("[T] he concept of 'retention' of priority dates has always been limited to visa petitions filed by the same family member. A visa petition filed by another family member receives its own priority date."); *id.* at 38–39 ("[T]he [F2B Family Preference] petition filed on behalf of the beneficiary cannot retain the priority date from the [F4 Family Preference] petition filed by her aunt because the [latter] has been filed by her father, a new petitioner.").

Plaintiffs also contend that the decision in *Wang* is unreasonable because it is inconsistent with the decision of the United States District Court for the Northern District of Illinois in *Baruelo v. Comfort,* No. 05 C 6659, 2006 WL 3883311, at \*1 (N.D.Ill. Dec. 29, 2006). *Baruelo* held that § 1153(h)(3) required the conversion of the plaintiff in that case from the F2A Family Preference Category to the F2B Family Preference Category when she aged out while her mother was awaiting a visa. *See id.* at \*10. But this type of conversion, involving the same Petitioner and a Beneficiary who was eligible for the F2A Family Preference Category before aging out and becoming immediately eligible for the F2B Family Preference Category, is exactly the type that *Wang* found Congress contemplated in enacting § 1153(h)(3). By contrast, Plaintiffs here impermissibly attempt to convert a Form I–130 Petition filed by one Petitioner into one filed by a distinct Petitioner after the Beneficiary has had a gap in Family Preference Category eligibility. *See Wang,* 25 I. & N. Dec. at 34–35. Accordingly, the Court finds that Plaintiffs have failed to demonstrate that that *Baruelo* undermines *Wang.*

Plaintiffs also assert that *Wang's* limitation of § 1153(h)(3) to conversions from the F2A Family Preference Category to the F2B Family Preference Category renders the subsection superfluous. According to plaintiffs, 8 C.F.R. § 204.2(a)(4) ("§ 204.2(a)(4)"), which was already in existence at the time Congress enacted § 1153(h)(3), provides for automatic conversion of Form I–130 Petitions from the F2A Family Preference Category to the F2B Family Preference Category upon the Beneficiary turning twenty-one. Section 204.2(a)(4) reads:

A child accompanying or following to join a principal alien under section 203(a)(2) of the Act may be included in the principal alien's second preference visa petition. The child will be accorded second preference classification and the same priority date as the principal alien. However, if the child reaches the age of

21 prior to the issuance of the visa to the primary alien parent, a separate petition will be required. In such case, the original priority date will be retained if the subsequent petition is filed by the same petitioner. Such retention of priority date will be accorded only to a son or daughter previously eligible as a derivative beneficiary under a second preference spousal petition.

*Id.* § 204.2(a)(4). The Court is not persuaded that this section renders the BIA's interpretation of § 1153(h)(3) superfluous. For example, § 204.2(a)(4) does not mention automatic conversion, which is at the heart of § 1153(h)(3), and instead explicitly requires the filing of "a separate petition." *Id.* Thus, Plaintiffs have not compellingly shown that the Court must find the BIA's interpretation of § 1153(h)(3) to be arbitrary or capricious because of its purported excessiveness when read in conjunction with § 204.2(a)(4).

Lastly, the Court disagrees with Plaintiffs' contention that the BIA erred because it failed to follow its own earlier, unpublished decision in *Matter of Garcia,* 2006 WL 2183654 (BIA 2006). Plaintiffs' argument misstates the legal effect of an unpublished BIA decision. An unpublished BIA decision such as *Garcia,* unlike a published one such as Wang, has no precedential value, and is not accorded *Chevron deference.* See 8 C.F.R. § 1003.1(g); *Rotimi v. Gonzales,* 473 F.3d 55, 57–58 (2d Cir.2007). The Court therefore concludes that the BIA did not interpret § 1153(h)(3) in a manner arbitrary, capricious, or manifestly contrary to the statute by declining to adhere to its earlier, unpublished decision in *Garcia.* See *Ajdin v. BCIS,* 437 F.3d 261, 264–65 (2d Cir.2006).[5]

The Court concludes that Plaintiffs fail to carry their burden, *see George,* 577 F.3d at 1011 (*quoting City of Olmsted Falls,* 292 F.3d at 271), to show that the BIA's resolution of the ambiguity in § 1153(h)(3) in *Wang* is arbitrary, capricious, or manifestly contrary to the language in that statute. *Accord Zhang,* 663 F.Supp.2d at 920–21. Rather, the Court finds that, far from arbitrary and capricious, the BIA's construction is carefully reasoned in line with the related immigration regulations and the statute's text, legislative history, and purpose.

## E. THE USCIS'S APPLICATION OF WANG TO CEN'S PETITION

Under *Wang,* the USCIS properly found that Cen is not entitled to the June 1994 Priority Date that Plaintiffs seek because the 1994 Petition cannot be "converted" to a new Form I–130 Petition and Cen therefore cannot "retain" the Priority Date from the 1994 Petition. When Cen reached twenty-one, he no longer qualified to be "converted" to a new Family Preference Category because one did not exist for grandchildren of lawful permanent residents. *Wang,* 25 I. & N. Dec. at 35 (finding that Wang's sister could not be converted because when she aged out, no Family Preference Category existed for nieces of United States citizens). Cen was indisputably ineligible under the INA to be a Beneficiary between the time at which he aged out at twenty-one and the time at which his mother became a lawful permanent resident of the United States.

Cen also cannot "retain" the June 1994 Priority Date of the 1994 Petition because that petition was filed by his grandfather, while the 2008 Petition was filed by his

---

**5.** The Court notes that the BIA's prior, unpublished decision construing § 1153(h)(3) in a manner inconsistent with its interpretation in *Wang* undercuts to a degree Plaintiffs' argument at *Chevron* step one that the statute is plain and unambiguous.

mother. *Id.* at 36 (finding that Wang's sister could not retain the 1992 Priority Date because the 1992 Petition was filed by her uncle, while the 2006 Petition was filed by her father). In addition, as the BIA properly found in Wang, the approximately ten-year delay in USCIS's issuance of a visa to Cen's mother, Li, is not the type of delay that Congress sought to address in enacting the CSPA. To the contrary, as in *Wang,* the delay in the issuance of a visa to Li was caused by the demand for visas exceeding the relevant Numerical Limitation set by Congress, not delay by reason of agency failure to promptly adjudicate the 1994 Petition. *See id.* at 38. The Court concludes that Plaintiffs have not shown error in the USCIS's present application of the BIA's construction of § 1153(h)(3) in *Wang.*

### III. *ORDER*

For the preceding reasons, it is hereby

**ORDERED** that the motion (Docket No. 14) of defendants Paul Novak as Director of the Vermont Service Center of the United States Citizenship and Immigration Services (the "USCIS"), Jonathan Scharfen as Acting Director of the USCIS, Eric Holder as the Attorney General of the United States, and Janet Napolitano as the Secretary of the Department of Homeland Security, to dismiss the complaint of plaintiffs Feimei Li and Duo Cen is GRANTED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**