# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-60944

MIRIAM YOLANDA BOLVITO; EDGAR LEONEL BOLVITO; BRYAN LEONEL BOLVITO; JEFFREY ALEJANDRO BOLVITO

Petitioners

v.

MICHAEL B MUKASEY, U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Petitioners Miriam Yolanda Bolvito ("Bolvito"), her husband Edgar Leonel Bolvito, and her two sons Bryan Leonel Bolvito and Jeffrey Alejandro Bolvito have petitioned for review of an order of the Board of Immigration Appeals ("BIA") affirming the decision of the immigration judge ("IJ") ordering them removed from the United States. For the reasons set forth below, we DENY the petition for review.

## I. STATUTORY AND REGULATORY BACKGROUND

United States citizens and lawful permanent residents may file a visa petition on behalf of certain relatives to obtain lawful permanent residency in the United States. See Akhtar v. Burzynski, 384 F.3d 1193, 1196 (9th Cir. 2004).

The total number of family-sponsored immigrants is capped at 480,000 for each fiscal year. Id. (citing 8 U.S.C. § 1151(c)(1)(A)). Immediate relatives of a United States citizen, defined as the children[1] and spouse of a citizen, the parents of a citizen if the citizen is at least twenty-one years of age, and certain widows and widowers of citizens and their children, "may immigrate to the United States without regard to any quota system or waiting period." Id. (citing 8 U.S.C. § 1151(b)(2)(A)(i)).[2] For those family members who are not immediate relatives of citizens, there are four numerically-limited family-sponsored preference categories. See 8 U.S.C. § 1153(a). First preference is given to unmarried sons and daughters of U.S. citizens; second preference to spouses, children, and unmarried sons and daughters of permanent resident aliens; third preference to married sons and daughters of U.S. citizens; and fourth preference to brothers and sisters of U.S. citizens. Id.[3]

---

[1] To qualify as a "child" under the Immigration and Nationality Act, the person must be unmarried and under twenty-one years of age. See 8 U.S.C. § 1101(b)(1).

[2] Even though immediate relatives of citizens are permitted to immigrate in unlimited numbers, the overall cap on the number of family members permitted to immigrate in each fiscal year nevertheless includes immediate relatives of citizens. See Austin T. Fragomen, Jr. & Steven C. Bell, Immigration Fundamentals §3:1.1 (4th ed. 2007). Thus, "excessive demand for visas by immediate relatives of citizens can lead to a decrease in visas available to other relatives eligible for family-sponsored immigration." Id. However, "the overall numerical cap is flexible; once the floor on minimum available visas for other relatives is reached because of excessive demand by immediate relatives of citizens, the overall cap will rise with any further excessive demand for visas by those immediate relatives." Id.

[3] "Under the INA, the minimum level of annual immigration for the four family-sponsored preferences is set at 226,000." Fragomen & Bell, at §3:1.1. The INA limits the number of visas that can be issued in each fiscal year to persons that qualify within each category as follows: first preference category – 23,400 plus any visas not required for the fourth preference category; second preference category – 114,200 plus the difference between the number of persons granted permanent resident status in the immediate relative category in the immediately preceding year and 226,000, except that not less than 77 percent of such visas shall be allocated to the spouses and children of legal permanent residents; third preference category – 23,400 plus any visas not required for the first and second preference categories;

After a citizen or legal permanent resident has filed, on behalf of an alien relative, a visa petition (also known as a Form I-130 Petition for Alien Relative), the Government "will 'approve' the petition after verifying that the claimed familial relationship is bona fide. An approved petition carries with it both a 'preference category' and a 'priority date.'" Drax v. Reno, 338 F.3d 98, 114 (2d Cir. 2003).[4] "Within the preference categories, immigrant visas are issued on a first-come-first-served basis." Kooritzky v. Reich, 17 F.3d 1509, 1511 (D.C. Cir. 1994). An alien's place in the waiting line for an immigrant visa is determined by his or her "priority date," that is, the date on which the approved visa petition was filed. See id.; 8 C.F.R. § 204.1(c) ("The filing date of a petition shall be the date it is properly filed . . . and shall constitute the priority date."); 22 C.F.R. § 42.53(a) ("The priority date of a preference visa applicant under INA 203(a) or (b) shall be the filing date of the approved petition that accorded preference status."); Richard D. Steel, Steel on Immigration Law § 4:17 (2d ed. 1992, updated through August 2007) ("In a relative preference case, the priority date is the date that the visa petition (Form I-130) was filed.").

Where, as here, the alien, on whose behalf a visa petition was filed by a relative, was previously admitted to the United States, but became subject to removal by virtue of his failure to maintain the nonimmigrant status by which the alien was admitted, see 8 U.S.C. § 1227(a)(1), the alien may apply for immigrant status pursuant to 8 U.S.C. § 1255(a), without having to first leave

---

fourth preference category – 65,000 plus any visas not required for the first, second, and third preference categories. See 8 U.S.C. § 1153(a)(1)-(4); Richard D. Steel, Steel on Immigration Law § 4:15 (2d ed. 1992, updated through August 2007).

[4] We have explained in a different context that "the approval of Form I-130 results in the beneficiary of the petition being classified as an immediate relative for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status." United States v. Asibor, 109 F.3d 1023, 1035 (5th Cir. 1997).

the country, through a process known as "adjustment of status."  See Akhtar v. Gonzales, 450 F.3d 587, 590 (5th Cir. 2006), reh'g granted on other grounds, 461 F.3d 584 (explaining that "[b]efore 1960, aliens in the United States without a valid visa had to go abroad to apply for permanent resident (immigrant) status" and that "[i]n 1960, Congress eliminated that burden by expanding eligibility for 'adjustment of status'"); see also Succar v. Ashcroft, 394 F.3d 8, 13 (1st Cir. 2005) ("Adjustment of status is 'a technical term describing a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . without leaving the United States.'") (quoting 3B Am. Jur. 2d Aliens & Citizens § 2134).  Under 8 U.S.C. § 1255(a), an "admitted alien," defined as an individual who has presented himself for inspection by an immigration officer and who has been allowed to enter the country,[5] may have his status adjusted to that of a legal permanent resident if: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  See also 8 C.F.R. § 245.1(a) (with some exceptions not pertinent here, "[a]ny alien who is physically present in the United States . . . may apply for adjustment of status to that of a lawful permanent resident of the United States if the applicant is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of filing of the application"); 8 C.F.R. § 245.2(a)(2) ("An immigrant visa must be immediately available in order for an alien to properly file an adjustment application under section 245 of the Act.").

Stated another way, in order to be eligible for an adjustment of status, the alien must show that an immigrant visa is immediately available to him at the

---

[5] See 8 U.S.C. § 1101(a)(13)(A).

time the application for adjustment is filed. See 8 U.S.C. § 1255(i)(2). Even if the alien's Form I-130 visa petition has been approved, an immigrant visa can only be obtained if a visa is available for the priority date assigned to the alien. See 8 C.F.R. § 245.1(g)(1) ("An alien is ineligible for the benefits of section 245 of the Act [to apply for an immigrant visa] unless an immigrant visa is immediately available to him or her at the time the application is filed."). Assuming that the alien falls into one of the four family-sponsored preference categories, "the current Department of State Bureau of Consular Affairs Visa Bulletin will be consulted to determine whether an immigrant visa is immediately available." Id. For adjustment of status purposes, "an immigrant visa is considered available . . . [if] the preference category applicant has a priority date on the waiting list which is earlier than the date shown in the Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current)." Id.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The petitioners are natives and citizens of Guatemala. On November 18, 1999, the petitioners were admitted to the United States with B-2 visas with permission to remain in this country until May 17, 2000.[6] In May 2005, the Department of Homeland Security ("DHS") initiated removal proceedings against the petitioners. DHS asserted that the petitioners were removable under 8 U.S.C. § 1227(a)(1)(B) as aliens who remained in the United States

---

[6] B-2 nonimmigrant visas are "designed to permit a short term stay" for tourist purposes. See United States v. Thiongo, 344 F.3d 55, 58 (1st Cir. 2003). To obtain a B-2 visa, "an applicant must establish that he or she has a legitimate reason for travel, that the stay is temporary in nature, that the applicant has sufficient means to finance the proposed trip, and that the applicant has sufficient business or family ties in the home country to assure the United States Consular Officer of his or her intent to return." Id.

beyond the time permitted.[7] At the petitioners' master calendar hearing on August 22, 2005,[8] they admitted the allegations contained in their notices to appear, conceded removability, and indicated that they intended to seek relief from removal through applications for adjustments of status pursuant to 8 U.S.C. § 1255(a), which, as discussed above, requires, inter alia, that immigrant visas are "immediately available to [them] at the time [their] application is filed." This petition for review turns on that issue – whether immigrant visas were immediately available to petitioners at the time that their application for adjustment was filed.

At the master calendar hearing, the petitioners presented the following evidence. On November 9, 1981, Bolvito's stepfather, Francisco Rodriguez, who

---

[7] Title 8 United States Code section 1227(a)(1)(B) provides:

(a) Classes of deportable aliens[:] Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: (1) Inadmissible at time of entry or of adjustment of status or violates status . . . . (B) Present in violation of law[;] Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(I) of this title, is deportable.

[8] We have described the typical process as follows:

Immigration court proceedings generally involve an initial 'master calendar' hearing and, subsequently, an 'individual' hearing. During the master calendar hearing, an IJ advises the alien of the charges against him. During the subsequent individual hearing, the alien and government counsel are afforded an opportunity to argue the merits of the case. At the close of the individual hearing, the IJ typically issues a decision on the merits of an alien's claims.

Zhang v. Gonzales, 432 F.3d 339, 346 n. 5 (5th Cir. 2005). We note here that the IJ ruled on the merits of petitioners' case during the master calendar hearing after further development of the record, but for the reasons discussed infra, this did not violate petitioners' due process rights.

was a lawful permanent resident, filed an I-130 visa petition on behalf of Bolvito's mother, Guillermina Rodriguez, whom he had married in New Jersey on August 7, 1981. Bolvito was listed as a child of Guillermina Rodriguez on the 1981 I-130 petition. On December 11, 1981, Guillermina Rodriguez's petition was approved, which, as discussed earlier, meant that the Government determined the claimed familial relationship to be bona fide and consequently accorded Guillermina Rodriguez a preference category (second) and priority date (November 9, 1981). On May 27, 1982, Guillermina Rodriguez successfully adjusted her status and became a lawful permanent resident. However, between the date that Guillermina Rodriguez's I-130 petition was approved and the date that Guillermina Rodriguez adjusted her status, Bolvito turned twenty-one years of age on January 16, 1982.[9] This is significant because pursuant to 8 C.F.R. § 204.2(a)(4):

> A child accompanying or following to join a principal alien under [8 U.S.C. § 1153(a)(2)] may be included in the principal alien's second preference visa petition. The child will be accorded second preference classification and the same priority date as the principal alien. However, if the child reaches the age of twenty-one prior to the issuance of a visa to the principal alien parent, a separate petition will be required. In such a case, the original priority date will be retained if the subsequent petition is filed by the same petitioner. Such retention of priority date will be accorded only to a son or daughter previously eligible as a derivative beneficiary under a second preference spousal petition.

In other words, had Bolvito not turned twenty-one years of age before her mother adjusted her status, Bolvito would have been considered a "derivative beneficiary" of the visa petition filed on behalf of her mother under 8 C.F.R. §

---

[9] Bolvito's birthdate is listed in the record as both January 10, 1961, and January 16, 1961. We will assume for Bolvito's benefit that the later date, January 16, is her correct birthdate, but the difference is insignificant for purposes of this petition.

204.2(a)(4). Instead, because Bolvito turned twenty-one years of age before her mother adjusted her status, a separate petition was required to be filed on her behalf by her stepfather, Francisco Rodriguez, in order to retain her mother's November 9, 1981 priority date; the record reflects, however, that no such petition was subsequently filed on her behalf.[10] Accordingly, Bolvito did not adjust her status in May 1982.

Approximately two months later, on July 24, 1982, Bolvito was married. At that point, as a married daughter of a legal permanent resident who had turned twenty-one years of age, Bolvito no longer fell into any of the family-sponsored preference categories. See 8 U.S.C. § 1153(a)(2) (according second preference category status to the "children" (i.e., under the age of twenty-one) and "unmarried sons or unmarried daughters" of legal permanent residents).[11] Bolvito's mother could not file an I-130 visa petition on Bolvito's behalf until the mother became a United States citizen, at which point Bolvito would be accorded third preference category status. See 8 U.S.C. § 1153(a)(3).

About nineteen years later, Bolvito's mother became a United States citizen on November 9, 2001. She then filed an I-130 petition on behalf of her

---

[10] This was for good reason. Even if Bolvito's stepfather had filed a petition on Bolvito's behalf after she turned twenty-one, that petition would not have been approved because 8 U.S.C. § 1101(b)(1)(B) defines "stepchild" as a child under the age of eighteen at the time the marriage creating the status of stepchild occurred. Bolvito turned eighteen in January 1979, well before her mother married her stepfather in August 1981. Thus, Bolvito would not have been recognized as a proper beneficiary of a visa petition filed directly on her behalf by her stepfather.

[11] As discussed earlier, the four family-sponsored preference categories are: (1) unmarried sons and daughters of citizens; (2) spouses, children, and unmarried sons and unmarried daughters of legal permanent residents; (3) married sons and married daughters of citizens; and (4) brothers and sisters of citizens. 8 U.S.C. § 1153(a).

daughter, Bolvito, on January 3, 2002.[12] That visa petition was approved for filing purposes on November 4, 2004. In the meantime, Bolvito filed an application for adjustment of status with the United States Citizenship and Immigration Services ("CIS") on October 17, 2003. Even though the I-130 petition had been approved, the CIS denied Bolvito's adjustment of status application on May 28, 2005, because a visa was not immediately available at that time that would have enabled her to adjust her status. More specifically, the CIS determined that Bolvito's priority date was January 3, 2002, the date on which Bolvito's mother filed the I-130 petition on her behalf. At the time Bolvito filed her status adjustment application, visas were only available to those with a priority date on or before July 1, 1997. Accordingly, because there was no visa immediately available to Bolvito at the time she filed her status adjustment application, the CIS determined that Bolvito was ineligible to adjust her status to that of a lawful permanent resident. See 8 C.F.R. § 245.1(a) ("Any alien who is physically present in the United States . . . may apply for adjustment of status to that of a lawful permanent resident of the United States if the applicant is eligible to receive an immigrant visa and an immigrant visa is immediately available at the time of filing of the application."). On that same date, the CIS denied separate I-130 visa petitions filed by Bolvito's mother on behalf of Bolvito's husband and two sons because there is no family preference category under the INA for a son-in-law or grandchildren.

It was at that point that DHS initiated removal proceedings against petitioners, resulting in the petitioners' appearance in front of the IJ at the master calendar hearing. There, Bolvito argued that the CIS erred in denying

---

[12] By this point, Bolvito, her husband, and her two sons were living in the United States even though their B-2 visas had expired more than a year earlier.

her status adjustment application because it miscalculated her priority date. She contended that, by virtue of the fact that she was listed on the petition filed on behalf of Guillermina Rodriguez on November 9, 1981, her priority date was November 9, 1981, not January 3, 2002. Consequently, she asserted that there was a visa immediately available to her at the time she filed her adjustment status application, as visas were available to those with a priority date on or before July 1, 1997. At the same time, Bolvito conceded that her husband and two sons could make no independent argument for eligibility to adjust their respective status because no I-130 visa petition had been approved for any of them. Rather, she acknowledged that their eligibility for adjustment of status rose or fell on the outcome of her adjustment of status application, contending that if she could adjust her status to a legal permanent resident, then her husband and two sons could also adjust as beneficiaries of her approved I-130 visa petition.

The IJ rejected Bolvito's arguments and concluded that none of the petitioners were eligible for adjustment of status. The IJ stated that under 8 C.F.R. § 204.2(a)(4) Bolvito did not retain a 1981 priority date because (1) at the time Guillermina Rodriguez received her visa, Bolvito had already turned twenty-one years old, and was thus no longer in the second family-sponsored preference classification, and (2) the 1981 I-130 petition was filed by Francisco Rodriguez, whereas the 2002 I-130 petition was filed by Guillermina Rodriguez. Thus, the IJ determined that Bolvito, and consequently the other petitioners, were ineligible to adjust their status because no visa petition was immediately available for their January 3, 2002 priority date. The IJ ordered that the petitioners be removed to Guatemala.

The petitioners appealed the decision to the BIA, which affirmed the IJ's decision without opinion. The petitioners then filed a timely petition for review.

### III. STANDARD OF REVIEW

"On a petition for review of a decision of the BIA, we review questions of law de novo and findings of fact for substantial evidence." Sung v. Keisler, 505 F.3d 372, 375 (5th Cir. 2007). We defer to the BIA's interpretation of immigration regulations if the interpretation is reasonable. Tesfamichael v. Gonzales, 469 F.3d 109, 113 (5th Cir. 2006). Here, "[b]ecause the BIA summarily affirmed the opinion of the IJ, we review the factual findings and legal conclusions of the IJ." Eduard v. Ashcroft, 379 F.3d 182, 186 (5th Cir. 2004).

### IV. DISCUSSION

The central issue presented by this petition for review is whether the IJ erred as a matter of law when he determined that Bolvito's priority date was January 3, 2002, rather than November 9, 1981. Stated succinctly, if Bolvito's priority date was January 3, 2002, she is ineligible for adjustment of status because at the time she applied to adjust her status, visas were only available to those with priority dates on or before July 1, 1997; on the other hand, if Bolvito's priority date was November 9, 1981, she is eligible for adjustment of status.[13] Bolvito contends in her petition for review that she can claim her mother's November 9, 1981 priority date as her own.

We find no merit in Bolvito's argument. Under the applicable law and regulations, Bolvito was no longer considered a derivative beneficiary of the 1981 I-130 petition (and hence entitled to her mother's priority date) by the time her mother adjusted her status. As discussed earlier, Bolvito turned twenty-one in January 1982, which was after her stepfather filed an I-130 petition on behalf of her mother, but before her mother adjusted her status to lawful permanent

---

[13] As discussed earlier, pursuant to 8 C.F.R. § 245.1(g), an immigrant visa is considered available when the applicant has a priority date on the waiting list that is earlier than the date shown in the Department of State Bureau of Consular Affairs Visa Bulletin, which at the time Bolvito filed her status adjustment application was July 1, 1997.

resident on May 27, 1982. Pursuant to 22 C.F.R. § 42.53(c), only a spouse or child of the principal alien is entitled to the priority date of the principal alien. Similarly, under 8 U.S.C. § 1153(d), only a spouse or child is entitled to the same status and same order of consideration when "accompanying or following to join" the principal alien seeking to become a lawful permanent resident under the second visa preference category. The Immigration and Nationality Act defines the term "child" as an unmarried person under the age of twenty-one. 8 U.S.C. § 1101(b)(1). Accordingly, Bolvito was unable to obtain lawful permanent resident status as a derivative beneficiary of the 1981 I-130 petition because she was no longer considered a child at the time her mother adjusted her own status. See Fano v. O'Neill, 806 F.2d 1262, 1263 (5th Cir. 1987); see also 9 U.S. Dep't of State Foreign Affairs Manual 42.53 n.6.1(b) ("A preference applicant's priority date is linked to the underlying petition and qualifications for that particular status. Loss of entitlement to status (through demise, attaining the age of 21 years, etc.) results in the loss of a priority date.") (emphasis added); Immigration Law and Procedure, Vol. 3, § 37.05[2][a], 37-16 ("[T]he requisite spousal or parental relationship must persist both at the derivative's visa issuance and his or her admission to the United States. Thus, a qualifying familial relationship that is terminated due to death, "aging out," divorce or other events no longer entitles the derivative noncitizen to accompanying or following to join benefits.") (emphasis added).

Rather, pursuant to 8 C.F.R. § 204.2(a)(4), quoted supra, because Bolvito reached the age of twenty-one prior to the issuance of a visa to her mother, a separate petition on her behalf was required to adjust her status. Moreover, § 204.2(a)(4) clearly states that Bolvito could retain her mother's 1981 priority date only "if the subsequent petition [was] filed by the same petitioner," in this case, Bolvito's stepfather. See id. at Vol. 4, § 51.03[4][f], 51-40 ("That child loses eligibility on reaching 21 unless he or she becomes the principal beneficiary of

a separate petition by the original petitioner."); see also Memorandum from Paul W. Virtue, Acting Executive Assoc. Comm'r, to INS Officers, Preservation of INA Section 203(a)(2) Adjustment Applications Filed by Child Applicants Who Later Reach 21 Years of Age, File No. HQ 70/23.1-P (June 18, 1997), reprinted in 2 Bender's Immigration Bulletin 590 (July 15, 1997) (stating that the derivative beneficiary loses entitlement to his or her status as a child accompanying or following to join a principal visa beneficiary "upon reaching the age of 21 years, unless he or she becomes the direct beneficiary of a new visa petition filed on his or her behalf by the original petitioner").  It is clear from the record that Bolvito's stepfather never filed a petition on behalf of Bolvito; instead, it was Bolvito's mother, after she became a United States citizen in late 2001, who filed the most recent petition for Bolvito.  Accordingly, because her subsequent petition was not filed by the same petitioner, Bolvito, by the plain terms of 8 C.F.R. § 204.2(a)(4), cannot retain her mother's 1981 priority date.[14]

In spite of the language contained in 8 C.F.R. § 204.2(a)(4), Bolvito maintains that she can claim her mother's 1981 priority date as her own because she is a "grandfathered" alien, such that under 8 U.S.C. § 1255(i) she can adjust her status to lawful permanent resident.[15]  A "grandfathered alien" is defined as "an alien who is the beneficiary (including a spouse or child of the alien

---

[14] As discussed earlier, even if Bolvito's stepfather had filed a petition on Bolvito's behalf at some later point, it would have been to no avail under the applicable statutes and regulations.

[15] Section 1255(i)(1) states, in relevant part:

[A]n alien physically present in the United States who entered the United States without inspection . . . who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 1153(d) of this title) of a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001 . . . may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence . . . .

beneficiary if eligible to receive a visa under section 203(d) of the Act) of a petition for classification under section 204 of the Act which was properly filed with the Attorney General on or before April 30, 2001, and which was approvable when filed." 8 C.F.R. § 245.10(a)(1)(i)(A).  Bolvito contends that she was a beneficiary of the 1981 I-130 petition, that it was properly filed before April 30, 2001, and that it was approvable when filed, as evidenced by the fact that her mother became a lawful permanent resident through the 1981 petition. She also asserts that, pursuant to 8 C.F.R. § 245.10(i), the fact that she did not obtain an immigrant visa as a result of the 1981 petition does not preclude her from now seeking adjustment of status under 8 U.S.C. § 1255(i) on the basis of another approved visa petition, such as the one that her mother filed on her behalf in 2002.  The gravamen of Bolvito's argument is therefore that, because she fits the definition of a grandfathered alien under 8 U.S.C. § 1255(i), she may use November 9, 1981, as her priority date.

Bolvito misapprehends the effect of 8 U.S.C. § 1255(i).  That provision simply makes certain grandfathered aliens who were physically but unlawfully present in the United States statutorily eligible to apply for an adjustment of status to that of an alien lawfully admitted for permanent residence. See Ahmed v. Gonzales, 447 F.3d 433, 437-38 (5th Cir. 2006); see also Sayani v. Gonzales, 236 F. App'x 99, 100 (5th Cir. June 8, 2007) (unpublished).  It is "significant because it allows individuals to preserve their ability to file for permanent residence despite the existence of circumstances that would otherwise render them ineligible for immigration" because "[b]y definition, grandfathered individuals are ineligible for adjustment of status under the normal standards . . . ."  Fragomen & Bell, at § 2:10.2.  Thus, § 1255(i), as the Government acknowledges in its brief, allows Bolvito, by virtue of her mother's 1981 visa petition, to apply for adjustment of status, even though the most recent petition on Bolvito's behalf was filed on January 3, 2002, which came after the April 30,

2001 deadline. See id. ("[T]he alien remains grandfathered in the event that an amended petition or application is filed after April 30, 2001 or in the event that the alien ultimately desires to adjust status based on an entirely different application or petition.").[16] However, § 1255(i) does not necessarily make Bolvito eligible for adjustment. Id. Rather, "[t]o receive such an adjustment of status, a removable alien's § 1255(i) application must be accompanied by an available immigrant visa, and the entire application for adjustment of status must meet with the discretionary approval of the Attorney General or his designee." Ahmed, 447 F.3d at 438 (citing 8 U.S.C. § 1255(i)(2)) (emphasis added);[17] see also 8 C.F.R. § 245.10(b)(2) ("An alien who . . . meets the definition of a 'grandfathered alien' may apply for adjustment of status under section 245 of the [INA] if the alien . . . is eligible for immigrant classification and has an immigrant visa number immediately available at the time of filing for adjustment of status."); Fragomen & Bell, at § 2:10.2 ("To be eligible for adjustment under section 245(i), it still must be shown that . . . a visa [is] immediately available when the section 245(i) application is filed."). Section 1255(i) thus still requires that the petitioner have an immediately available visa petition in order to take advantage of the "grandfathered alien" provision. We cannot find, and Bolvito does not point us to, any authority for the proposition

---

[16] Even though the 1981 petition ultimately did not result in Bolvito's being able to adjust her status, it was nevertheless "approvable when filed." See Fragomen & Bell, at § 2:10.2 ("In situations in which the denial, withdrawal or revocation [of a visa petition] took place because of a change in circumstances arising after filing (for example . . . the derivative child aged out . . .), the filing is likely to have been approvable when filed.").

[17] Section 1255(i)(2) states:

Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (B) an immigrant visa is immediately available to the alien at the time the application is filed.

that § 1255(i) allows a grandfathered alien to claim a visa priority date for which he or she is otherwise ineligible.[18] Consequently, because, as discussed above, Bolvito is unable to retain her mother's priority date under 8 C.F.R. § 204.2(a)(4), her correct priority date is January 3, 2002, meaning there was no visa immediately available to her at the time she applied for adjustment of status. The IJ therefore did not err when he determined that Bolvito was ineligible to adjust her status to that of a lawful permanent resident.[19]

Finally, the petitioners assert that their due process rights were violated when the IJ determined after a master calendar hearing that they were statutorily ineligible for adjustments of status. The petitioners contend that they were denied a full and fair opportunity to be heard because they were not afforded an opportunity to submit evidence and cross-examine witnesses at an individual hearing on the merits. We find no merit in the petitioners' due process arguments. As an initial matter, the petitioners never requested a continuance or objected to the timing of the hearing during the proceedings

---

[18] Bolvito's reliance on 66 Fed. Reg. 16383, 16385, 2001 WL 284947 (March 26, 2001), is misplaced. It states, in pertinent part:

> Under the "alien based" reading, a grandfathered alien is not limited to filing for adjustment of status using the particular visa petition that provided the basis for grandfathering. Thus, a properly grandfathered alien with a petition that was denied or revoked due to circumstances arising after the filing of the petition may apply to adjust status using any other proper basis for adjustment. Although grandfathered by the denied or revoked petition, the alien may not use that petition as an adjustment basis, given that the petition was not approved.

This simply means that Bolvito was eligible to apply for adjustment of status by virtue of the 1981 petition filed on her behalf; it does not otherwise make her eligible for adjustment, such as by according her an earlier priority date than that to which she is entitled under the regulations.

[19] Because Bolvito does not assert any independent ground on which the IJ erred in determining that her husband and two sons were ineligible for adjustment of status, we see no basis on which to overturn that aspect of the IJ's ruling.

before the IJ. Accordingly, the petitioners waived their due process claims. See Zhang v. Gonzales, 432 F.3d 339, 346-47 (5th Cir. 2005) ("'Failure to raise a due process objection . . . waives that objection on appeal.'") (quoting Newby v. Enron Corp., 394 F.3d 296, 309 (5th Cir. 2004)). Even assuming, arguendo, that the petitioners had not waived their due process claims, they would still fail. Our review of the transcript of the master calendar hearing indicates that the petitioners were provided ample opportunity to submit evidence and to present arguments on their behalf through counsel, both of which the petitioners did. On appeal, the petitioners fail to explain what evidence they were unable to submit or elicit at the master calendar hearing, nor do they offer any additional legal arguments that they did not present to the IJ. Moreover, regardless of any additional evidence or legal analysis that the petitioners wished to present to the IJ, the petitioners were statutorily ineligible for adjustments of status. Accordingly, they have not met their requirement to show substantial prejudice. See Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997) ("Due process challenges to deportation proceedings require an initial showing of substantial prejudice.").

## V. CONCLUSION

For these reasons, the petition for review is DENIED. The petitioners' motion for stay of deportation pending this court's decision on their petitions for review is also DENIED as moot.