**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 7, 2013

Lyle W. Cayce
Clerk

No. 12-60691

MANUEL GARCIA–PEREZ,

Petitioner,

v.

ERIC HOLDER, JR., Attorney General,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals
(A077 791 757)

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Manuel Garcia–Perez, proceeding *pro se*, seeks review of a decision from the Board of Immigration Appeals ("BIA"). In 2011, Garcia–Perez filed a motion to reopen and rescind an *in absentia* removal order that was issued against him in 2002. The Immigration Judge ("IJ") denied the motion, and the Board of Immigration Appeals ("BIA") affirmed without opinion. In this pending petition, Garcia–Perez argues that the IJ's denial of the motion was in error because he was not properly notified of the 2002 removal hearing and because he is eligible

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60691

to seek asylum and withholding of removal based on changed conditions in his home country.  We DENY the petition.

I.

Garcia–Perez is a native citizen of Honduras and is not a citizen of the United States.  On February 6, 1999, Garcia–Perez attempted to enter the country illegally near Brownsville, Texas, where he was apprehended by the United States Border Patrol.  Garcia–Perez claimed to be Mexican; accordingly, the Border Patrol transported him to Mexico.  Soon thereafter, however, the Mexican authorities returned him across the border, advising the Border Patrol that Garcia–Perez was in fact Honduran.  The government did not initiate removal proceedings, and Garcia–Perez was released.

The Border Patrol again apprehended and detained Garcia–Perez on October 8, 2002, in New Orleans, Louisiana.  The Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") against Garcia–Perez on October 8, 2002.[1]  The same day, Garcia–Perez was personally served with the NTA, which he signed "Manuel Garcia."  A Border Patrol agent also signed the NTA.  Immediately above Garcia–Perez's signature, the NTA indicated that Garcia–Perez had been provided oral notice, in the Spanish language, of the location of his hearing (i.e., New Orleans) and of the consequences of a failure to appear.  The NTA also warned Garcia–Perez that he was required to report his mailing address and any subsequent changes in his mailing address.

---

[1] The NTA stated that Garcia–Perez was an alien present in the United States who had not been admitted or paroled.

2

No. 12-60691

On October 18, 2002, the immigration court mailed a Notice of Hearing ("NOH") to Garcia–Perez at the INS detention facility in New Orleans, where he was detained at the time, informing him that the removal hearing was scheduled for October 29, 2002. Upon being released on bond on October 22, 2002, Garcia–Perez reported his address as 915 Freeman Avenue, Long Beach, California. An INS official certified that he had (1) provided Garcia–Perez with a Change of Address form and (2) notified Garcia–Perez that he was required to inform the government of any change of address. The immigration court mailed a new NOH to Garcia–Perez at the Long Beach address on October 23, 2002, rescheduling the removal hearing for December 2, 2002. The NOH was not returned as undeliverable.

Garcia–Perez failed to appear at the December 2, 2002, hearing, prompting the IJ to issue an *in absentia* order of removal. The order was mailed to Garcia–Perez at 915 Freeman Avenue and was not returned as undeliverable.

Nearly nine years later, on August 5, 2011, Garcia–Perez filed with the IJ a motion to reopen and rescind the 2002 removal order. Although Garcia–Perez conceded that he had received the NTA on October 8, 2002, he argued that the NTA alone was insufficient because it did not provide the specific time and date of the removal hearing. Garcia–Perez further argued that he had not received the information concerning the removal proceedings in his native Spanish language. Garcia–Perez claimed that he had not received a copy of either the NOH or the *in absentia* removal order and argued that the government was required to serve all notices and orders in person or by certified mail. Moreover, in a declaration attached to the motion, Garcia–Perez stated that, at the time of his detention in 2002, his address had been 1754 High Avenue, Long Beach,

3

No. 12-60691

California.  Based on the foregoing, Garcia–Perez urged the IJ to reopen and rescind the 2002 removal order for lack of proper notice.

Garcia–Perez also urged the IJ to reopen the removal order so that he could apply for asylum and withholding of removal.  In addition to the declaration, Garcia–Perez attached to his motion an Application for Asylum and for Withholding of Removal ("Application") and various secondary accounts of the treatment of homosexuals in Honduras.  Through the declaration and the Application, Garcia–Perez explained that in Honduras he had been persecuted and tortured because he is a homosexual.

The IJ denied the motion on September 7, 2011, rejecting both of Garcia–Perez's grounds for relief.  Relying on 8 C.F.R. § 1003.23(b)(4)(ii), the IJ concluded that the notice provided to Garcia–Perez was legally sufficient and that therefore the motion to reopen and rescind on that basis was untimely.  Although the IJ noted that Garcia–Perez had provided "chilling details," the IJ concluded that, because the incidents recounted in the declaration and the Application happened before Garcia–Perez's entry into the United States in 1999, those incidents did not constitute "changed country conditions" under 8 C.F.R. § 1003.23(b)(4)(i).  The IJ also found that the evidence was not credible, noting that Garcia–Perez had a history of providing false information to United States immigration authorities.

On August 10, 2012, the BIA affirmed, without opinion, the decision of the IJ.  Garcia–Perez timely appealed.  *See* 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal.").

II.

No. 12-60691

Where, as here, a petitioner appeals a denial of a motion to reopen, we apply a highly deferential abuse-of-discretion standard. *Gomez–Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). Under this standard, we must affirm as long as the decision below was not "capricious, without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Id.* Because the BIA summarily affirmed the opinion of the IJ, we consider the factual findings and legal conclusions of the IJ. *Eduard v. Ashcroft*, 379 F.3d 182, 186 (5th Cir. 2004). We review findings of fact for substantial evidence, meaning that we must accept the IJ's findings unless the evidence compels a contrary conclusion. *Bolvito v. Mukasey*, 527 F.3d 428, 435 (5th Cir. 2008). We review questions of law *de novo*, though we defer to the IJ's interpretation of immigration regulations if the interpretation is reasonable. *Id.*

## III.

When initiating removal proceedings against an alien, the government must provide the alien with notice of any removal hearing, either in person or by mail if personal service is not practicable. 8 U.S.C. § 1229(a)(1). The notice must specify:

(A)   The nature of the proceedings against the alien.

(B)   The legal authority under which the proceedings are conducted.

(C)   The acts or conduct alleged to be in violation of law.

(D)   The charges against the alien and the statutory provisions alleged to have been violated.

(E)   The alien may be represented by counsel . . . .

(F)   (i)   The requirement that the alien must immediately provide . . . a written notice of an address . . . at which the alien may be contacted . . . .

(ii)   The requirement that the alien must provide . . . a written record of any change of the alien's address . . . .

No. 12-60691

     (iii)   The consequences under section 1229a(b)(5) of this title of failure to provide address . . . information pursuant to this subparagraph.

(G)   (i)   The time and place at which the proceedings will be held.

     (ii)   The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

§ 1229(a)(1)(A)–(G). If the immigration court subsequently reschedules the time or location of the removal hearing, the government must notify the alien, in writing, of the new time or location and of the consequences of failing to appear. § 1229(a)(2)(A). Where an alien has failed to keep the immigration court apprised of his most current mailing address, however, the government is not obligated to provide notice of any change in the time or location of the removal hearing. § 1229(a)(2)(B).

Under 8 U.S.C. § 1229a(b)(5)(A), an alien who fails to appear at a removal hearing after written notice has been provided shall be ordered removed *in absentia* if the government establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable. For purposes of this section, written notice is considered sufficient if it was provided at the most recent address reported by the alien. § 1229a(b)(5)(A). But no written notice is required in order for the IJ to enter an *in absentia* order if the alien has failed to report his address as required by § 1229(a)(1)(F). § 1229a(b)(5)(B).

Motions to reopen and rescind *in absentia* removal orders generally must be filed within 90 days of the date of the final order of removal. § 1229a(c)(7)(C)(i). Congress has created several exceptions to this general time limitation, allowing otherwise untimely motions where the alien "did not receive notice" of the removal hearing in accordance with § 1229(a)(1) and (2), *see*

No. 12-60691

§ 1229a(b)(5)(C)(ii), and where the alien seeks to apply for asylum based on changed country conditions, *see* § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i). Garcia–Perez invokes both of these exceptions. We address each in turn.

A.

To establish the applicability of the exception provided in § 1229a(b)(5)(C)(ii), Garcia–Perez must demonstrate that he "did not receive notice" as required by § 1229(a)(1) and (2). Garcia–Perez advances a single argument on appeal: that when the NTA was served on him on October 8, 2002, he did not receive notice, in Spanish, of the requirement that he keep the immigration court informed of his address or of the consequences of failing to appear.[2] We are not persuaded.

The NTA, which was signed by both Garcia–Perez and a Border Patrol agent, states that Garcia–Perez was provided oral notice in Spanish of the time and place of his hearing and of the consequences of failing to appear. The IJ found as a matter of fact that Garcia–Perez had received this notice in Spanish, and we see no evidence in the record that compels a contrary conclusion. *See Bolvito*, 527 F.3d at 435. Moreover, following the receipt of the NTA, the October 23, 2002, NOH (scheduling the December 2, 2002, removal hearing) was served by mail to Garcia–Perez's last reported address, 915 Freeman Avenue. Even assuming that Garcia–Perez's address was actually 1754 High Avenue, the evidence before the IJ established that Garcia–Perez either provided an incorrect address (i.e., 915 Freeman Avenue instead of 1754 High Avenue) or failed to keep the immigration court apprised of his current address (i.e., 1754 High Avenue). *See Gomez–Palacios*, 560 F.3d at 361 (where an alien claims to have

---

[2] Although Garcia–Perez advanced several other arguments in his motion to reopen and rescind, he has abandoned them on appeal. These are arguments are therefore precluded. *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) ("Although pro se briefs are afforded liberal construction . . . even pro se litigants must brief arguments in order to preserve them.").

## No. 12-60691

not actually received notice, the alien's failure to keep the government apprised of his address is grounds for denying a motion to reopen and rescind under § 1229a(b)(5)(C)(ii)).[3]

### B.

There is no time limit on filing a motion to reopen a removal order for the purpose of applying for asylum or withholding of removal. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1002.23(b)(4)(i). To establish the exception, a petitioner must provide evidence of "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1002.23(b)(4)(i). The petitioner must show a change in country conditions *since* the time of the prior removal hearing. *See* § 1229a(c)(7)(C)(ii); *see also Thomas v. Holder*, 396 F. App'x 60, 61 (5th Cir. 2010) (unpublished but persuasive); *Janfeshan v. Mukasey*, 303 F. App'x 189, 190 (5th Cir. 2008) (unpublished but persuasive). The motion must (1) state the new facts that will be proven at a hearing to be held if the motion is granted; (2) be supported by affidavits or other evidentiary material; and (3) be accompanied by the appropriate application for relief and all supporting documentation. 8 C.F.R. § 1003.23(b)(3). If the petitioner cannot make the proper showing, the motion to reopen is subject to the general 90-day limitation. *See* § 1229a(c)(7)(C)(i).

In his motion filed nearly nine years after the December 2, 2002, removal hearing, Garcia–Perez fails to demonstrate that the evidence of the conditions in Honduras was not available and would not have been discovered prior to that

---

[3] Garcia–Perez does not contend that he never received the October 18, 2002, NOH (scheduling the removal hearing for October 29, 2002) that was delivered to the detention facility in New Orleans. Garcia–Perez does not attempt to explain why he failed to appear on October 29, 2002.

No. 12-60691

hearing.  As the IJ observed, the evidence submitted in the declaration and the Application relates to incidents that occurred before Garcia–Perez left Honduras. Moreover, the motion to reopen states only that Garcia–Perez fears being tortured or killed if he returns to Honduras and that Honduras's "country conditions" reports show that homosexuals are persecuted by the government.[4] Read together with the declaration and the Application, these "country conditions" reports—presumably, the secondary accounts attached to the motion—do not contain new facts that would support a grant of asylum.  The alleged country conditions existed prior to the date of the removal hearing, as explicated in detail by Garcia–Perez.  The law requires a petitioner to show *changed* conditions in order to reopen a removal proceeding.  Garcia–Perez had the opportunity to assert the basis for asylum or withholding of removal nine years before he filed his motion to reopen; he therefore cannot avail himself of § 1229a(c)(7)(C)(ii).  Accordingly, the IJ's decision was not "without foundation in the evidence" or "arbitrary rather than the result of any perceptible rational approach."  *See Gomez–Palacios*, 560 F.3d at 358; *see also Ojeda–Calderon v. Holder*, 2013 WL 4029146, at *3, __ F.3d __ (5th Cir. Aug. 8, 2013) ("[A]n 'Immigration Judge has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief.'" (quoting 8 C.F.R. § 1003.23(b)(3))).

IV.

Garcia–Perez has failed to establish that he did not receive proper notice or that he is eligible for asylum or withholding of removal based on changed country conditions.  We therefore conclude that the IJ did not abuse its

---

[4] Garcia–Perez also quotes extensively from *Joseph v. Holder*, 600 F.3d 1235 (9th Cir. 2010), to refute the IJ's conclusion that his statements were not credible.  Because the IJ did not abuse its discretion in concluding that Garcia–Perez failed to establish changed conditions, we do not address Garcia–Perez's credibility.

No. 12-60691

discretion in denying Garcia–Perez's motion to reopen and rescind the *in absentia* removal order entered on December 2, 2002.  We DENY the petition.