Samuel GOMEZ, also known as Samuel Martinez Gomez, also known as Samuel Martinez, Petitioner,

v.

Loretta LYNCH, U.S. Attorney General, Respondent.

No. 14–60661.

United States Court of Appeals, Fifth Circuit.

April 20, 2016.

Raed Gonzalez, Esq., Senior Attorney, Sheridan Gary Green (argued), Curtis George White (argued), Gonzalez Olivieri, L.L.C., Houston, TX, for Petitioner.

Jennifer Raquel Khouri (argued), Office of Immigration Litigation, Jennifer A. Singer, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Samuel Gomez petitions for review of orders of the Board of Immigration Appeals ("BIA"). Finding no error, we deny the petition.

## I.

Gomez, a citizen of El Salvador, entered the United States without admission or parole in the early 1980s. He was granted temporary resident status by applying for amnesty under the Immigration Reform and Control Act of 1986 and was given a one-year temporary resident card in May 1992 (expiring May 1993). In 2005, his application for asylum was denied, but he applied for and received temporary protected status ("TPS"). That status expired in 2009, and Gomez's application for renewal was denied.

In June 2010, Gomez was served with a notice to appear charging removability as an alien present without admission or parole in violation of 8 U.S.C. § 1182(a)(6)(A)(i). He sought an adjustment of status under Section 245(a) of the Immigration and Nationality Act, which provides that, at the discretion of the Attorney General, an alien lawfully inspected and admitted or paroled into the United States may have his status adjusted to that of an alien lawfully admitted for permanent residence (subject to certain requirements not relevant here). See 8 U.S.C. § 1255(a).

An immigration judge ("IJ") held an evidentiary hearing to determine whether Gomez was eligible for adjustment. Gomez's counsel claimed that Gomez had been lawfully admitted in 1993 after a trip to El Salvador. Gomez presented to the IJ his temporary resident card (expiry May 1993), a copy of the first two pages of his Salvadoran passport, a copy of a passport page bearing entry and exit stamps from El Salvador in February and March 1993, a boarding-pass stub appearing to indicate a flight to Houston on the same date as the exit stamp, and what appears to be an

airline baggage claim receipt. The government presented Gomez's 2005 and 2009 applications for temporary protective status, on both of which Gomez had indicated that he had arrived "EWI," or "entered without inspection." The 2005 application listed his current immigration status as "EWI."

Gomez testified that he had traveled to El Salvador for two weeks between February and March 1993, when he was a lawful temporary resident, and that he returned via Houston Intercontinental Airport. The IJ also inquired about Gomez's general history in the United States and various tangential matters. Gomez's answers to the IJ's questions were, in several instances, internally inconsistent or in conflict with the previous representations in his TPS applications. None of the written evidence indicated that Gomez had actually passed through an immigration checkpoint on arrival in Houston, and Gomez did not testify to that effect.

Before the IJ decided whether Gomez had been lawfully admitted, the government successfully moved to pretermit the application for adjustment of status. The IJ determined that Gomez was not eligible for an adjustment. First, the IJ reasoned that Gomez had not satisfied his burden of showing that he was ever lawfully admitted to the United States. And second, the IJ reasoned that, even if Gomez had been lawfully admitted in 1993 as he claimed, expiration of his status as a temporary resident would terminate the legal effect of that admission under 8 C.F.R. § 245a.2(u)(4).[1]

Gomez appealed to the BIA, maintaining that the IJ had erred because it was "im-probable to believe that he was not inspected when he deplaned at the Bush International [*sic*] Airport on a flight from El Salvador in 2003." Gomez theorized that for some unknown reason, his passport was not stamped at the conclusion of his inspection upon arrival, and he mislaid his Form I–94 (which would be given to a returning temporary resident). He did not challenge the IJ's conclusion that, even if he had established lawful admission in 1993, any status he gained as a result of his temporary residency was erased upon the expiration of the period of temporary residency.

The BIA affirmed. First, it determined that Gomez had not carried his burden to show that he was lawfully admitted. The BIA noted that none of the evidence that Gomez submitted—the temporary resident card, the baggage claim ticket, the passport stamps, and the boarding pass stub—showed that he actually had been admitted or paroled. Further, the BIA noted that Gomez had twice represented to the government (after the purported El Salvador trip) that he had last entered the United States without inspection. Finally, the BIA affirmed the IJ's determination that, regardless of whether Gomez actually was admitted in 1993, expiration of his temporary residency later that year meant that he reverted to his pre-temporary residency status—an alien present without admission or parole. The BIA therefore found that Gomez "did not meet his burden to demonstrate his eligibility for adjustment of status under section 245(a)."

Shortly thereafter, Gomez got a new lawyer and moved to reopen his case with the BIA, alleging ineffective assistance of

---

**1.** That regulation reads: "Return to unlawful status after termination. Termination of the status of any alien previously adjusted to lawful temporary residence under section 245A(a) of the Act shall act to return such alien to the unlawful status held prior to the adjustment, and render him or her amenable to exclusion or deportation proceedings under section 236 or 242 of the Act, as appropriate."

counsel ("IAC").[2] He attached additional evidence designed to show that he was lawfully admitted in 1993.

First, Gomez included an affidavit in which, for the first time in the proceeding, he asserted explicitly that he did in fact go through the airport's immigration control checkpoint, at which "the immigration officers did not say anything to [him]. They just took [his] passport and [his] temporary resident card, looked at them, handed them back to [him], and let [him] through." Second, Gomez submitted a copy of a page from the Immigration and Naturalization Service ["INS"] Inspector's Field Manual that specifies procedures for readmission of temporary residents. Third, he tendered an affidavit by his wife, attesting that she picked him up at the Houston airport after the 1993 trip, that prior counsel never asked for these details or took an affidavit, and that the TPS applications from 2005 and 2009 indicating that Gomez had entered without inspection were incompetently and erroneously filled out by prior counsel's law office. Fourth, Gomez submitted additional documents relating to the El Salvador trip: an undated airline baggage agreement bearing a signature strongly resembling Gomez's and the back of the previously submitted boarding-pass stub.

The BIA denied the motion to reopen, reasoning that Gomez still had not furnished any evidence to demonstrate that he had proceeded through the immigration checkpoint at the Houston airport. Therefore, he could not show that he was preju-diced by any IAC, so he was not entitled to relief. This petition for review followed.

## II.

 We first review the BIA's decision affirming the IJ's conclusion that Gomez had not established a lawful admission and that, even if he had, it would not matter because expiration of his temporary residency canceled any effect that the admission would have had. Because the BIA adopted the IJ's decision and added commentary, we review the decisions of both the IJ and the BIA.[3] The agency's factual findings are reviewed for substantial evidence and its legal conclusions *de novo*. *Bolvito v. Mukasey*, 527 F.3d 428, 435 (5th Cir.2008). Substantial-evidence review is extremely deferential: The question is not whether the evidence best supports a conclusion contrary to the factfinder's but, instead, whether *all* reasonable fact-finders would determine that the evidence *compels* that contrary conclusion. *See Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir.2005). Although our general review of legal issues is *de novo*, interpretations of immigration law issued in a non-precedential single-member opinion of the BIA (as this opinion was) are entitled to *Skidmore*[4] deference: The court should defer to them to the extent that they are well reasoned, thorough, and persuasive. *Rodriguez–Avalos v. Holder*, 788 F.3d 444, 449 n. 8 (5th Cir.2015).

 An individual is "admitted" into the United States when he presents himself to immigration authorities, undergoes a procedurally regular inspection, and is

---

**2.** Gomez also timely filed in this court a petition for review of the BIA's decision, but we stayed the proceedings to allow the BIA to adjudicate the motion to reopen.

**3.** *See Shah v. Lynch*, No. 11–60594, ⸺ Fed. Appx. ⸺, ⸺, 2016 WL 1391909, at *1 (5th Cir. Apr. 6, 2016) (per curiam); *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir.1997).

**4.** *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

given permission to enter.[5] The BIA's determination whether an individual was admitted is a factual finding that we review for substantial evidence.

■ Gomez urges that all rational factfinders would be compelled to conclude that he was lawfully admitted in 1993. His theory hinges on the notion that his evidence that he arrived in Houston on an international flight creates an ironclad inference that, after disembarking, he presented himself at the immigration checkpoint and was properly admitted. Gomez's reading of the evidence, however, is not sufficient to lift his claims over the high barrier of substantial-evidence review. He had the burden of proof to show a lawful admission, but none of the evidence before the BIA on the initial appeal actually demonstrates that a procedurally regular admission occurred. At most, the evidence regarding the trip generates an inference that an admission well may have occurred—which is not enough for us to declare that all rational factfinders would be compelled to agree.

This is especially so given that—as we have noted—Gomez specifically represented on two different occasions (the 2005 and 2009 TPS applications) that he had entered without inspection. The 2005 application also indicates that Gomez's status as of 2005 was "EWI"—"entered without inspection." Both applications further contain a space soliciting an "Arrival/Departure Record" into which an alien is instructed to enter his Form I–94 number if he has one; he left both blank. But according to his own evidence, an immigration inspector would have been required,

under the governing regulations, to give him an I–94.

Gomez tries to explain these prior representations away, but he fails to establish that no rational factfinder could conclude (as the BIA did) that they fatally undermined his argument that he was admitted in 1993. First, Gomez points to his wife's affidavit, but it was not before the IJ or the BIA in the initial appeal and therefore cannot serve as a reason for reversal. Next, Gomez references his testimony that the representations in the TPS applications were a result of clerical error. He contends that "both the immigration judge and DHS counsel" found this testimony credible.

■ We disagree: The record of the hearing does not support Gomez's claim that the IJ found him credible as a general matter or on that specific issue. Although the IJ did make a vague comment about credibility, its meaning is uncertain on a cold record. But even the very strongest reasonable reading of the IJ's contextually cryptic comment is that he was not sure whether Gomez's *overall* credibility problems, as evidenced by his contradictory and evasive answers to plain questions throughout the hearing, extended to the issue of the Houston flight and purported reentry. That is not the same thing as a favorable finding of credibility. Further, neither the IJ nor the BIA appears to have credited Gomez's explanation of the inconsistent representations in the TPS applications, and, given his inconsistent and evasive testimony, there is no reason to credit that explanation. Any inconsistency in testimony is sufficient to justify an adverse credibility finding.[6]

---

**5.** *See* 8 U.S.C. § 1101(a)(13)(A) (defining "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"); *Matter of Quilantan,* 25 I. & N. Dec. 285, 290–91 (BIA 2010) (holding that admission requires only procedural regularity).

**6.** *See Wang v. Holder,* 569 F.3d 531, 538 (5th Cir.2009). It may have been error for the IJ

In sum, we cannot say that all rational factfinders would feel compelled to conclude that Gomez carried his burden of showing that he was admitted to the United States in 1993. Thus, we will not disturb the BIA's ruling that Gomez did not demonstrate that he was lawfully admitted and is therefore ineligible for an adjustment of status.[7]

## III.

We now turn to Gomez's claim that the BIA erred in denying his motion to reopen on grounds of ineffective assistance of prior counsel. The BIA has determined that, in a narrow category of cases, IAC is a ground for reopening a case. *See Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). Motions to reopen proceedings before the BIA are heavily disfavored. *Lara v. Trominski*, 216 F.3d 487, 496 (5th Cir.2000). The BIA's denial of a motion to reopen is reviewed under an especially deferential iteration of the abuse-of-discretion standard: Its refusal to reopen must be affirmed "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir.2005) (quoting *Pritchett v. I.N.S.*, 993 F.2d 80, 83 (5th Cir.1993)).

An alien moving to reopen under *Lozada* must show both that counsel was so ineffective as to render the proceeding fundamentally unfair and that the alien was prejudiced by that ineffectiveness.[8] The BIA denied the motion to reopen on the ground that Gomez still had not furnished evidence to demonstrate that he had lawfully entered (via admission at Houston in 1993 or otherwise). Thus, the BIA reasoned, Gomez had not shown prejudice: He had not demonstrated that the outcome of the proceeding would have been any different but for the alleged IAC, because even with new counsel he had not produced evidence that would demonstrate his eligibility for adjustment of status. Thus, the question before us is whether the new evidence that Gomez furnished was so persuasive on the issue of his ostensible 1993 admission that the BIA's disbelief was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao*, 404 F.3d at 304.

Because the new evidence before the BIA was not so overwhelmingly persuasive that denying the motion amounted to an arbitrary, capricious, or fundamentally irrational decision, we deny review of its refusal to reopen. As we have stated, Gomez presented two affidavits (his and

---

and BIA implicitly to discount Gomez's testimony as not credible rather than entering an explicit adverse credibility finding identifying specific reasons for disbelieving him. *See* 8 U.S.C. § 1229a(c)(4)(B), (C); *Zhang*, 432 F.3d at 344. But Gomez does not advance that argument, so it is waived under the general principle that we will not consider theories not briefed. *See, e.g., Hamilton Props. v. Am. Ins. Co.*, No. 15–10382, —— Fed.Appx. ——, —— n. 5, 2016 WL 1533931, at *5 n. 5 (5th Cir. Apr. 14, 2016) (per curiam); *United States v. Thames*, 214 F.3d 608, 611 n. 3 (5th Cir.2000).

7. Because we dispose of this issue by upholding the BIA's factual finding, we do not pass on its legal conclusion that 8 C.F.R. § 245a.2(u)(4) would expunge any lawful admission that did occur during the period when Gomez was a lawful temporary resident.

8. *Lozada*, 19 I. & N. Dec. at 638. The alien must also satisfy a variety of procedural requirements not relevant here; the government agrees that Gomez's motion was properly presented.

his wife's), additional documentary evidence of his travel from El Salvador to Houston, and a page from the INS Field Manual. The travel documentation and the vast majority of the material in both affidavits are cumulative of evidence already before the BIA. Gomez's affidavit primarily just restates his assertions regarding the trip; the only new item is that finally he directly states, in two brief sentences, that he went through the immigration checkpoint at the Houston airport.

There is no reason why the BIA was required to believe that potentially self-serving and wholly unproven account. That is true especially given that the BIA appears to have determined that Gomez was not a credible witness (a determination that is amply supported by the record). Gomez's wife's affidavit does not provide any new material information: It indicates that she picked Gomez up from the airport in Houston, but that does not say anything about whether he was actually admitted via a procedurally regular inspection. The affidavit also says that neither she nor her husband ever told prior immigration counsel that Gomez was present without inspection, and the affidavit asserts that the contrary representations on the TPS applications must, therefore, have been the result of incompetent work by prior counsel. That is either cumulative of, or inconsistent with, Gomez's testimony at the hearing.[9] And finally, the page from the INS manual hardly speaks at all to the core of the controversy: Gomez's failure to furnish any evidence—aside from his own testimony—that he was actually lawfully admitted.

Gomez has not demonstrated an abuse of discretion in the BIA's refusal to reopen, because he has not shown that his evidence was so overwhelming that the BIA's continued disbelief in his factual assertions was arbitrary, capricious, or utterly unreasonable. Because the BIA did not err in rejecting Gomez's initial appeal or his motion to reopen, the petition for review is DENIED.

---

9. To the extent that Ms. Gomez's affidavit is construed as providing new material, it is information inconsistent with Mr. Gomez's prior testimony and therefore undercuts his credibility. The only plausibly 'new' information in Ms. Gomez's affidavit is her statement that neither she nor Gomez had told prior counsel or his paralegals that Gomez had entered without inspection. Mr. Gomez's account of events, as related at the hearing, was that he misunderstood the question posed by the paralegal who was filling out the form, so he answered based not on his most recent trip but on his original trip.